Deal Unemployment Compensation Case.

Argued October 1, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

David R. Perry, Special Deputy Attorney General, with him James H. Duff, Attorney General, for appellant.

Roland M. Morgan, with him Charles R. Davis, Special Deputy Attorney General, James H. Duff, Attorney General, and R. Carlyle Fee, Assistant Special Deputy Attorney General, for appellee.

OPINION BY RENO, J., October 30, 1946:

Claimant in this unemployment compensation proceeding was discharged by his employer on February 16, 1945, effective February 22, 1945. At that time, a discharge for misconduct did not disqualify him for benefits. He applied for benefits on September 6, 1945. By that time the amendment of May 29, 1945, P. L. 1145, to §402 of the Unemployment Compensation Law, 43 PS §802, effective June 1, 1945, was operative. It provides: "An employe shall be ineligible for compensation for any week— . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."

The bureau, relying upon the amendment, denied benefits. Upon claimant's appeal, the referee found that claimant had been absent from his work without notice to or consent of his employer and, affirming the bureau, concluded: "Under these circumstances it must be held that from his actions the claimant could reasonably anticipate his dismissal and he is, therefore, disqualified from receiving credit for the claims filed by him." His decision was filed two months before we decided MacFarland v. Unemployment Compensation Board of Review, 158 Pa. Superior Ct. 418, 45 A. 2d 423, and he

followed the doctrine of constructive voluntary leaving of employment which we there disapproved.[1]

Upon the claimant's appeal to the board it reversed the referee. It found additionally that claimant's absences from work "were due mainly to soreness of his leg resulting from use of an artificial limb", but that "the company was not advised as to the reason for the absence." It held: "In the case of MacFarland v. Unemployment Compensation Board of Review . . . the [Superior] Court ruled that where a claimant is discharged by his employer, regardless of the reason therefor (with certain exceptions not here material), his unemployment is not due to voluntarily leaving work within the meaning of Section 402 (b). This decision rules the present appeal." The bureau appealed to this court.

The board properly followed the *MacFarland* case in holding that claimant's discharge could not be held to be a constructive voluntary leaving. But it did not decide whether claimant's discharge was due to his *wilful* misconduct. Its additional findings of fact seems to indicate that it was disposed to exonerate him of the charge of wilfulness. Nor did it discuss or squarely decide the contention raised by the bureau in its initial determination that claimant was rendered ineligible by the amendment to §402.

The question was implicit in the record of the *MacFarland* case, and perhaps was inferentially but cer-

---

[1] Strangely, and we do not know the reason for it, the original Pennsylvania Unemployment Compensation Law did not contain a disqualification for discharge for misconduct. It differed in this respect from the laws of at least 44 other states. The deficiency in the Pennsylvania act was not supplied until the amendment of 1945, supra. Meanwhile, in an understandable effort to fill the gap in our statute, the Board of Review evolved and applied the doctrine that the commission of an act which the worker knew would result in a discharge was a voluntary leaving within the meaning of §402 (b) of the act. This theory was disapproved in the *MacFarland* case, supra, decided January 18, 1946.

tainly not expressly decided by it. There the primary and indeed the only controverted question involved was whether a discharge for misconduct was equivalent to a voluntary leaving under §402 (b), and we held it was not. MacFarland was discharged on May 31, 1945, the day before the amendment became effective. He filed his claim upon a date not disclosed in the opinion in the *MacFarland* case, but which counsel inform us was June 6, 1945. Since we reversed the board, and remitted the record "with instructions to enter an appropriate order consistent with this opinion", its counsel now contends that in the *MacFarland* case we decided the question raised in this appeal.

Whether therein decided or not, the question now expressly raised requires critical examination. The bureau contends that an employe's eligibility depends upon the state of the law at the date of his application for benefits, and it must be confessed that sound reason supports that view. It may be affirmed as a general proposition that a claimant must possess the qualifications and have fulfilled the requirements prescribed by the law in force at the time he applies for benefits. Applied to the facts of this case, the bureau's contention means that a claimant who was separated from his employment at a time when a discharge for misconduct did not disqualify him, and to whom there then accrued a claim to benefits under the legislation existing at that time, becomes disqualified by a law enacted and effective after his separation, and before his application is actually filed. Its contention is, and the bureau's able counsel frankly avows it, that the disqualification created by the amendment applies retroactively and renders ineligible claimants who were separated from employment prior to its enactment if the separation was due to acts which under the amendment of 1945 amount to wilful misconduct connected with the work, although misconduct was not a disqualification at the time of the separation.

We cannot adopt the contention. To be sure, there is no vested right to compensation legislation or its benefits. Id. §901, 43 PS §881. Consequently the legislature is free to amend the act in any particular, and constitutionally accord its amendments retroactive effect. But the legislature had declared that we are not to construe its enactments to be retroactive unless the intention to make them so is clearly manifested by it. Statutory Construction Act of May 28, 1937, P. L. 1019, §56, 46 PS §556. Moreover, referring to the effect of amendments to existing law, it has explicitly declared that "the portions of the law which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective": Id. §73, 46 PS §573. Following these legislative pronouncements we are unable to discover in the amending Act of 1945 an intention by the legislature to enact retroactive legislation, and thereby to deny benefits to one whose separation from work occurred before June 1, 1945, for misconduct before that day.

The misconduct clause does not create a criminal offense, although the acts which justify a discharge might also constitute a crime, and deprivation of benefits is not a penalty, and hence the amendment is not technically ex post facto legislation as to acts committed before its effective date. Yet if the amendment were allowed to operate retrospectively, it would injuriously affect claimant by looking backward and giving to anterior circumstances a different legal effect from that which they had under the law as it existed at the time of the occurrence. Cf. 50 Am. Jur., Statutes, §476. This is at once the heart and vice of retrospective legislation, and to quote Chief Justice TILGHMAN in *Levy v. Northumberland Co.*, 4 S. & R. 291: "To take away, by retrospect, what a man had earned under the existing law, seems so contrary to justice, that a law

shall never be so construed, unless the intention is clearly expressed." "What a man had earned under the existing law," as applied to unemployment compensation legislation, is the employe's base-year credits. "Nothing short of the most indubitable phraseology is to convince us that the legislature meant their enactment to have any other than a prospective operation; and when they fix a future day for it to take effect, they stamped its prospective character on its face": *Dewart v. Purdy*, 29 Pa. 113, 117, per WOODWARD, J.

The amendment to §402 is included in an act containing a number of amendments to the Unemployment Compensation Law. Several amendments, as we read them without having before us the background out of which they arose, seem to be clearly intended to be retroactive. They mention dates and conditions prior to June 1, 1945. That is, the amending act is retroactive in some aspects and prospective in others, and is distinctly avowed to be retrospective as to certain features. The legislature has thus shown that it clearly understood that in this field it was competent to legislate retroactively, and that when it so legislated it should clearly manifest its intention. Its omission of an express provision denying benefits to those who were placed in a new disqualifying category has therefore added significance.

Accordingly, we hold that where the legislature adds a *disqualification* for unemployment benefits to the Unemployment Compensation Law, in the absence of a clear legislative expression of its intent that it shall be retroactive, it is operative only from the effective date of the amendment and does not disqualify a claimant for an act committed before that date. The amendment of 1945 applies to, and only disqualifies for, discharges caused by misconduct committed after its effective date.

Decision affirmed.