Thomas J. McDermott, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. The Daily Corporation, Intervenor.

Argued February 2, 1981, before Judges MENCER, CRAIG and PALLADINO, sitting as a panel of three.

*Kenneth S. Siegel, Malis, Tolson & Malis,* for petitioner.

*John T. Kupchinsky,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

*Mabel Dettere Sellers,* with her *Francis J. Tarquini, Jenkins, Tarquini & Jenkins,* for intervenor.

OPINION BY JUDGE MENCER, April 8, 1981:

Thomas J. McDermott (claimant) has appealed from an order of the Unemployment Compensation Board of Review (Board) which denied benefits for willful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

Claimant was employed as a truck driver by the Daily Corporation (Daily) for a period of 9 months. On March 12, 1979, claimant did not report to work due to illness and reported his absence to Daily. Claimant continued to be absent through March 15, without reporting his absence. On March 16, claimant did not report for work but arranged with the president of Daily to return to work on Monday, March 19. Claimant, however, failed to report for work on that day or at any time thereafter.

It is useful to examine this case from three perspectives in order to isolate the legal issues involved.

I. Daily maintained in its statement to the Office of Employment Security (OES) and in its testimony before the referee that claimant had abandoned his job and had failed to give notice of his intention to leave work. Daily further asserted that continuing work would have been available for claimant had he returned.

II. Claimant's father, Warren McDermott, was chief executive office of Daily at the time in question, although he has since been discharged. Warren McDermott testified that, when he returned from a trip to Florida on March 16, 1979, he "fired" claimant because he (Warren McDermott) was involved in a dispute with the president of Daily and no longer wanted his son working for that company.

III. Claimant contended in his statement to the OES and in his testimony before the referee that he

stopped working at Daily because his father took away his use of the company car and he no longer had transportation to or from work.

The OES and the referee denied benefits to claimant on the basis that (1) he voluntarily terminated his employment without reason of a necessitous and compelling nature, pursuant to Section 402(b)(1) of the Act, 43 P.S. §802(b)(1), and (2) he was not available for further work under Section 401(d) of the Act, 43 P.S. §801(d), because of a lack of transportation to any labor market. On appeal, the Board denied benefits on the ground that claimant was guilty of willful misconduct under Section 402(e) of the Act, 43 P.S. §802(e), for failing to properly report his absences to his employer.

We believe that the Board's determination of willful misconduct is not supported by substantial evidence. While the record is concededly confusing, Warren McDermott's testimony, when read in its entirety, clearly indicates that he "fired" his son because of an internal conflict with the president of Daily.

At the first hearing, when the referee posed the question, "Why did you fire your son?", Warren McDermott responded, "It gets very political, I was fighting, in fact I have the president of [Daily] in federal court." When the referee asked that same question later in the hearing, Warren McDermott answered, "Because I was fighting with my so-called partner and president, and it was getting to be an embarrassing situation, they had him doing a job that I didn't approve of, a spin-off company that I was trying to close down. . . ."

At the second hearing, when asked, "For what reason did you fire your son?", Warren McDermott answered, "I had been in Florida and he hadn't [shown] up for work for three or four days." At

that point, the referee apparently interrupted his testimony to question him on the dates involved. The Board nevertheless relied upon this single response to support its finding of willful misconduct. After the referee asked him several more questions about the time frame, Warren McDermott responded, "Let me tell you the story, forget the dates." He then testified, "[Claimant] was [at home] and he was very, very ill with the flu, he had been in bed all week, and I asked him if he called in and he said, 'Yes, and I don't know if I still have the job or not anyway,' and I said, 'Well I don't want you going back there.' And then we get into the political aspect of it." On at least three subsequent occasions during the second hearing, Warren McDermott stated that he fired his son because of his dispute with the president of Daily. When read in context, it is apparent that the statement, "I had been in Florida and he hadn't [shown] up for work for three or four days," was made to indicate the factual background of Warren McDermott's conversation with his son. Therefore, we believe that the Board's finding of willful misconduct is not supported by substantial evidence.

Claimant should nevertheless be denied benefits on the basis that he voluntarily left his employment without reason of a necessitous and compelling nature. We reiterate that claimant's only explanation for leaving his employment was that the company car was removed from his use. Therefore, granting benefits in this case would not be consistent with the fundamental purpose of the Act, which is to provide a semblance of economic security to those who are unemployed through no fault of their own. *Barillaro v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 325, 387 A.2d 1324 (1978).

Furthermore, in analyzing this case, it is important to isolate Warren McDermott, in his role as claim-

ant's father, from Warren McDermott, in his role as chief executive officer. We are not persuaded that claimant's separation from employment can properly be termed a "firing," where Warren McDermott was admittedly protecting his son's best interests, and not Daily's best interests, and where Daily indicated that continuing work was available for claimant after his purported "firing" on March 16.

A remand in this case is unnecessary since both the OES and the referee determined that claimant voluntarily left his employment without cause, and the referee specifically placed this matter in the case by stating at the outset of the hearing that he would take testimony on the issue of voluntary termination. Thus, this case is indistinguishable from *Hammerstone v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 256, 378 A.2d 1040 (1977), where we stated the following:

> In the past, we have remanded cases to the Board where it improperly declared a claimant ineligible under a section of the Act regarding which claimant had no opportunity to be heard or present evidence. *Chiaro v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 459, 366 A.2d 959 (1976); *see* Boob v. Unemployment Compensation Board of Review, 18 Pa. Commonwealth Ct. 624, 337 A.2d 293 (1975). The reason for such a remand is principally to allow the claimant an opportunity to present evidence on the issue upon which the case is to be decided. *See* Chiaro, *supra*. Here, the claimant had that opportunity. The referee made it clear at the start of the hearing that Section 402(e) (failure to accept suitable work) was being considered. It was not until the referee's decision was handed down that Section 402(b)(1) (volun-

tarily leaving) entered the picture. Under these circumstances, the need for a remand vanishes. The claimant's rights to notice and an opportunity to be heard would not be more fully protected by affording him a second opportunity to do precisely what he had a chance to do the first time. . . .

*Id.* at 260-61, 378 A.2d at 1042-43.

Accordingly, we enter the following

ORDER

AND Now, this 8th day of April, 1981, the order of the Unemployment Compensation Board of Review in the above captioned case, dated November 23, 1979, is hereby affirmed.

Judge WILKINSON, JR., did not participate in the decision in this case.