Catherine Latella, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Antoinette Uliano, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Evelyn B. Drake, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Margaret Capello, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Thelma Goldian, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Jack Kopf, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Joseph H. Nash, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Mary Oberholzer, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 16, 1982, before President Judge CRUMLISH and Judges ROGERS, BLATT, WILLIAMS, JR. and MACPHAIL.

16

*Jerome H. Gerber,* with him *Elliot A. Strokoff, Handler and Gerber, P.C.,* for petitioners.

*John T. Kupchinsky,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., April 29, 1983:

This is an appeal of Catherine Latella and seven similarly situated claimants[1] from Unemployment Compensation Board of Review (Board) decisions which affirmed referees' decisions upholding the Office of Employment Security's (OES) deduction of claimants' social security old age payments from their unemployment compensation weekly benefit rates in

---

[1] Due to the virtual identity of issues, these cases were consolidated by Order of this Court.

accordance with Section 404(d)(iii) of the Unemployment Compensation Law, (Law).[2] We reverse.

Claimants, all of whom were age 62 or over, were laid off by their respective employers due to lack of work. At various times during 1980, each claimant applied for unemployment compensation benefits. Although the OES determined claimants to be eligible for benefits under Section 404(d)(iii) of the Law, 43 P.S. §804(d)(iii), each claimant's weekly benefit rate was reduced by the amount of social security payments received.[3]

Section 404(d)(iii) provides in pertinent part:

(d) [E]ach eligible employe who is unemployed ... shall be paid ... compensation in an amount equal to his weekly benefit rate less ...

(iii) an amount equal to the amount of a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual.

The practical effect of Section 404(d)(iii) is to offset unemployment compensation benefits by the amount of pension or other retirement benefits received by an individual on a dollar-for-dollar basis. Section 404(d)(iii) tracks the language of the 1976 Federal Unemployment Tax Act (FUTA) amendment, codified at 26 U.S.C. §3304(a)(15),[4] disqualifying specific types of

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §804(d)(iii).

[3] After deduction of their respective social security benefit payments, claimants received the following weekly bnefit amounts: Catherine Latella, $14; Antoinette Uliano, $0; Evelyn Drake, $11; Margaret Capello, $13; Thelma Goldian, $10; Jack Kopf, $0; Joseph Nash, $49; Mary Oberholzer, $0.

[4] Unemployment Compensation Amendments of 1976, Pub. L. No. 94-566, 90 Stat. 2667 (1976). Congress subsequently amended Section 3304(a)(15) by enacting the Multiemployer Pension Plan Amendments Act of 1980, Pub. L. No. 96-364, 94 Stat. 1208. The amendment is not relevant to the disposition of this case.

18

wage replacement income. Section 3304(a)(15) is one of the minimum federal criteria set forth in 26 U.S.C. §3304(a) to which a state must conform for its unemployment program to be certified by the Secretary of Labor.[5]

Claimants primarily contend that Section 404(d)(iii) of the Law denies them equal protection in violation of Article III, Section 32 of the Pennsylvania Constitution. Claimants further allege that Section 404(d)(iii) violates Article II, Section 1 of the Pennsylvania Constitution because "the Legislature has . . . delegated the right to determine weekly benefits to those who control public (and private) pension funds"; that the retroactive application of the provision is contrary to the clear wording of Section 404(d); that the pension offset provision impairs the obligation of contracts in violation of Article 1, Section 10 of the United States Constitution; and that individuals entitled to maximum unemployment compensation benefits under Part E of the "Benefits Table"[6] found at Section 404(e)(1) of the Law, 43 P.S. §804(e)(i), cannot have their annual unemployment compensation balance reduced by the designated disqualifying income.

## I. EQUAL PROTECTION

Claimants allege that the pension offset provision violates the equal protection guarantee of Article III, Section 32 of the Pennsylvania Constitution[7] by man-

---

[5] Certification of a state as a participant in the federal-state cooperative unemployment compensation scheme 1) entitles the state's employers to a maximum 90% FUTA credit against the payroll tax of contributions made during the fiscal year to the state's unemployment compensation fund; and 2) federal funds for the administration of its unemployment compensation law are made available.

[6] Officially known as "Table Specified For The Determination Of Rate And Amount."

[7] Our Supreme Court has ruled that for purposes of equal protection claims the content of the Pennsylvania Constitution is not

dating the deduction of pension income, but not the deduction of alternative income such as rents, royalties, dividends and interest from unemployment compensation benefits. Individuals receiving disqualifying pension income are thus more harshly treated than beneficiaries in receipt of nondisqualifying alternative income.

Before evaluating claimants' equal protection claim it must first be noted that it is axiomatic "that there is a strong presumption in favor of the constitutionality of an act of the legislature and the burden lies heavily upon one challenging the act to show that it clearly, plainly and palpably violate[s] the Constitution." *Wallace v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 342, 347, 393 A.2d 43, 46 (1978). Accordingly, "every presumption must be indulged in favor of the constitutionality of a statute and the burden is heavy upon one who challenges it." *Gilman v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 630, 634, 369 A.2d 895, 897 (1977) (citation omitted). Claimants clearly have not met this burden.

Since the classification created by Section 404(d)(iii) is economic, impinges upon no fundamental interest, and does not operate to the peculiar disadvantage of a suspect class,[8] the standard for review for

significantly different from that of the Federal Constitution. *See, e.g., Commonwealth v. Kramer,* 474 Pa. 341, 378 A.2d 824 (1977); *Baltimore & Ohio Railroad Co. v. Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975) *appeal dismissed,* 423 U.S. 806 (1975). Thus, while federal and sister-state appellate decisions involving federal equal protection challenges to pension offset provisions similar to Pennsylvania's are not binding on us in a case involving the Pennsylvania Constitution, such decisions are particularly persuasive. *Cf., Fischer v. Departmet of Public Welfare,* 66 Pa. Commonwealth Ct. 70, 77, 78, 444 A.2d 774, 777, 778 (1982).

[8] Although claimants contend that the pension offset provision primarily discriminates against the elderly, it is well established

evaluating claimants' equal protection challenge is one of minimal scrutiny. *See, e.g., Martin v. Unemployment Compensation Board of Review,* 63 Pa. Commonwealth Ct. 629, 439 A.2d 207 (1982) ; *Bievenour v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 616, 401 A.2d 594 (1979) ; *Wallace.*

Under the "minimal scrutiny" standard, legislation is upheld if it classifies affected persons in a manner rationally related to legitimate governmental objectives. *Id.* at 347, 393 A.2d at 46. Thus, under the relatively relaxed standard applicable here, the classification established by Section 404(d)(iii) must be upheld under the equal protection provision of the Pennsylvania Constitution "if it bears *some* rational relationship to the legitimate purpose of the legislation." *Id.* at 347, 393 A.2d at 46 (emphasis in original) (citation omitted) ; *see generally, Dandridge v. Williams,* 397 U.S. 471 (1970) ; *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471 (1977).

In order to determine whether the classification established by Section 404(d)(iii) is rationally related to legitimate governmental objectives, the purposes and objectives of the Unemployment Compensation Law must be reviewed.

Section 404(d)(iii), and similar pension offset provisions rationally advance two legitimate government objectives : (1) the promotion of the fiscal integrity of the unemployment compensation fund; *see, Novak v. Unemployment Compensation Board of Review,* 73 Pa. Commonwealth Ct. 148, 457 A.2d 610 (1983) ; *McKay v. Horn,* 529 F. Supp. 847, 861 (D.N.J. 1981) ; *Cabais v. Egger,* 527 F. Supp. 498, 502 (D.D.C. 1981), rev'd in part on other grounds, 690 F.2d 234 (C.D. Cir.

---

that classification by age does not constitute a suspect classification. *See, Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307 (1976) ; *Bievenour v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 616, 401 A.2d 594 (1979).

1982); *Rivera v. Patino,* 524 F. Supp. 136, 146 (N.D. Calif. 1981); and (2) the elimination of the payment of duplicative, "windfall" unemployment benefits to those who, primarily because of their retirement eligibility, are receiving adequate wage replacement income and thus experiencing greater economic security than those less fortunate. *McKay,* 529 F. Supp. at 861-62; *Rivera,* 524 F. Supp. at 146.

It is undisputed that the Commonwealth has a legitimate interest in maintaing a self-supporting unemployment compensation program. *Bievenour* at 619, 401 A.2d at 595. As we stated in *Martin,* "the state has a legitimate interest in preserving the fiscal integrity of the fund", *Id.* at 634, 439 A.2d at 210; therefore, the disqualification of specific forms of wage replacement income, thus preventing the disbursement of "windfall" benefits, contributes to the conservation of limited public resources. *Id.*

The fundamental social purpose of the Unemployment Compensation Law, however, is to provide relief from the rigors of unemployment; that is, to provide some economic security to individuals exposed to financial distress during periods of forced unemployment. *See McDermott v. Unemployment Compensation Board of Review,* 58 Pa. Commonwealth Ct. 375, 427 A.2d 785 (1981); *Unemployment Compensation Board of Review v. Buss,* 26 Pa. Commonwealth Ct. 160, 362 A.2d 1113 (1976).

The Declaration of Public Policy of the Unemployment Compensation Law at Section 3, 43 P.S. §752, provides in pertinent part:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the

unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages of employes during periods when they are unemployed through no fault of their own. 43 P.S. §752. A fundamental purpose of the Unemployment Compensation Law, therefore, is to provide eligible individuals with funds to avoid the crushing burden of indigency while they seek other suitable employment. *Unemployment Compensation Board of Review v. Miedama*, 27 Pa. Commonwealth Ct. 207, 365 A.2d 900 (1976).

The Legislature, by disqualifying certain forms of wage replacement income, has made a reasonable determination that those with outside income have a reduced need for governmental assistance during a period of unemployment. If an individual, though unemployed, is provided with equivalent wage replacement income, the purpose of the statute is fulfilled in that the worker is not made indigent; the social evils the statute was designed to obviate (economic insecurity and indigency) are prevented. *See, In re Claim of Liss*, 80 A.D. 2d 716, 437 N.Y.S. 2d 731 (3d. Dept., 1981).

Furthermore, in Section 404(d) (iii), the Legislature denominated specific categories of alternative wage replacement income for offsetting against unemployment benefits. The emphasis upon pension and social security income reflects

a determination that those who are eligible for retirement benefits are less likely than others to return to the labor force following a period of unemployment, and hence at some remove from

the unemployment program's principal purpose of *providing crucial economic assistance during a job search.* (Emphasis added.)

*McKay,* 529 F. Supp. at 863.

Lastly, claimants contend that Section 404(d)(iii) makes an irrational distinction between pension and other sources of income such as rents and investment income. Although the classification may be imperfect, this does not invalidate Section 404(d)(iii). The Supreme Court has consistently held that:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classification made by its laws are imperfect. If the classification has some "reasonable basis" it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some unequality."

*Dandridge,* 397 U.S. at 485 (citation omitted.)

Based on the foregoing, we must conclude that the classification established by Section 404(d)(iii) is rationally related to legitimate governmental purposes, and, therefore, Section 404(d)(iii) of the Law is not violative of Article III, Section 32 of the Pennsylvania Constitution.

II. Unconstitutional Delegation of Legislative Power

Claimants next contend that the pension offset provision of Section 404(d)(iii) impermissibly delegates the Legislature's authority to determine unemployment compensation weekly benefit rates to the United States Congress in violation of Article II, Section 1 of the Pennsylvania Constitution. Since the social security benefit amount is established periodically by the Congress and is annually subject to a cost of living adjustment, the weekly benefit rates of claimants receiving disqualifying wage replacement income would

be determined not by the Legislature but, indirectly, by the Congress. This claim is also meritless.

It is well-settled that

> [T]he Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.

*Locke's Appeal,* 72 Pa. 491, 498 (1872).

*Locke's Appeal* distinguished between two types of legislation: "status-finding" and "rule-making." A "status-finding" type of legislation includes a statutory statement of policy which becomes operative only upon the finding by an administrative agent that a described status exists. The legislature may delegate the power to determine the existence or nonexistence of a described fact or status without unconstitutionally abdicating its role. *See, East Suburban Press, Inc. v. Township of Penn Hills,* 40 Pa. Commonwealth Ct. 438, 397 A.2d 1263 (1979) (not an unconstitutional delegation of legislative power to require newspapers to have second class mailing privileges as defined by U.S. Postal Service regulations to qualify to carry legal advertising) ; *Commonwealth v. Tarabilda,* 222 Pa. Superior Ct. 237, 294 A.2d 830 (1972) (not unconstitutional for Legislature to define narcotics as those drugs found by the United States Secretary of the Treasury to be addicting).

A "status-finding" statute, however, does not involve a law-making delegation, "at least not in the sense of creating general rules governing the subject of the legislature's concern. . . ." *East Suburban Press, Inc.,* at 444, 397 A.2d at 1266. In a "rule-making" type statute the "legislature states a general policy but gives the administrative agent, within limits set by express standards, the power to fill in details of the policy with regulations." *Id.* at 444, 397 at 1266.

In *East Suburban Press, Inc.*, we stated:

[T]he Pennsylvania General Assembly, in setting about to define publications eligible to carry legal advertising, did not delegate the formulation of rules on the subject of *legal advertising* to any external agency. The federal concern here is not with that subject at all but with the entirely different matter of *postal regulations*. (Emphasis in original.)

*Id.* at 445, 397 at 1267. Therefore, we concluded, "the legislature, in looking to the relevant but distinct role of another agency in its exclusive *postal* sphere, is not abdicating its role of the *legal advertising* sphere." *Id.* at 446, 397 at 1267 (emphasis in original).

The legislature, in enacting Section 404(d)(iii), did not delegate the formulation of *rules* involving offsetting of pensions against unemployment compensation benefits to Congress or any federal agency. The extent of federal involvement concerns Congress' exclusive role in establishing monthly social security benefit rates, a subject and purpose different from that of the Commonwealth's determination of unemployment weekly benefit rates after pension offset. *See, Id.* at 445, 397 at 1267.

Section 404(d)(iii), therefore, is an example of a "status-finding", and not "rule-making", type legislation in that it becomes operative only upon the finding by an administrative agent that a described status exists (that is, upon a finding of claimant's receipt of social security benefits or other retirement income). Claimants' reliance on *Holgate Brothers Co. v. Bashore*, 331 Pa. 255, 200 A. 672 (1938) is misplaced in that *Holgate* invoked a "rule-making" type statute, where the legislature, proposing to regulate working hours, delegated its rulemaking powers regarding working hours to federal administrative agencies, without limiting standards.

Section 404(d)(iii) does not constitute an unconstitutional delegation of legislative power to the United States Congress in violation of Article II, Section 1, of the Pennsylvania Constitution.

### III. Retroactivity and Impairment of Contract

Section 23(3) of the Act of July 10, 1980, P.L. 521, No. 1980-108 (Act 108) provides that

[t]he amendments to section 404(d) shall take effect immediately and shall be retroactive for claim weeks beginning on or after March 3, 1981.

The Board complied with this retroactive, effective date provision; claimants now allege that the Board in complying with Section 23(3) violated the express language of Section 404(d), Article I, Section 17, of the Pennsylvania Constitution and Article 1, Section 10, cl. 1 of the United States Constitution.

While Section 23(3) of Act 108 provides that Section 404(d) amendments "shall be retroactive for claim weeks *beginning on or after March 31, 1980*" (emphasis added), Section 404(d) *(as amended)*, added by Section 16 of the Act of July 10, 1980, P.L. 521, No. 1980-108 (Act 108) sets forth that the pension offset provision shall become effective on the "*week ending subsequent to the first day of July, 1980.*" (Emphasis added.)

A conflict exists, therefore, between two provisions in the same statute, Act 108. Since both provisions are particular in nature, operation and application, resort must be made to Section 1934 of the Statutory Construction Act, 1 Pa. C. S. §1934.[9] 1 Pa. C. S. §1934 provides that whenever several clauses in the same

---

[9] 1 Pa. C. S. §1933 provides in part that whenever a particular (special) provision is in irreconcilable conflict with a general provision in the same or another statute, the particular provision shall prevail unless the general provision was enacted later and the Legislature manifestly intended that the general provision should prevail.

statute are irreconcilable, "the clauses last in order of date or position shall prevail."

Although both provisions were enacted on the same date, July 10, 1980, Section 23(3) of Act 108 is later in position than Section 16 of Act 108. Thus, the Section 23(3) effective date prevails and claimants argument must fail. *See, Heck v. Zoning Hearing Board for Harveys Lake Borough,* 39 Pa. Commonwealth Ct. 570, 397 A.2d 15 (1979).

As to claimants' contention that the pension offset provision cannot be retroactively applied, Section 901 of the Law, 43 P.S. §881, allows that there is no vested right to unemployment benefits, "[c]onsequently the legislature is free to amend the act in any particular, and constitutionally accord its amendments retroactive effect." *Deal Unemployment Compensation Case,* 159 Pa. Superior Ct. 577, 581, 49 A.2d 278, 280 (1946).

Regarding the alleged violation of state and federal constitutional prohibitions against laws impairing the obligation of contracts, this argument too must fail. Quite simply, there is no contractual right to unemployment compensation under the contracts clause of the United States Constitution (*Rivera,* 524 F. Supp. at 143-44; *McKay,* 529 F. Supp. at 865-66; *Cabais,* 527 F. Supp. at 503), nor under Article 1, Section 17 of the Pennsylvania Constitution (*see, Deal,* 159 Pa. Superior Ct. at 581, 49 A.2d at 280).

IV. Reduction of Part E Benefit Year Compensation

Claimants' final contention is that the deduction of social security benefits from their weekly benefit rates was contrary to law, in that claimants were entitled to the maximum number of weeks of compensation under Part E of the Benefits Table at Section 404(e)(1) of

---

When 1 Pa. C. S. §1933 is inapplicable, as when the conflicting clauses are both particular (special) provisions, 1 Pa. C. S. §1934 is used in lieu of 1 Pa. C. S. §1933.

the Law, 43 P.S. §804(e)(1), and that only benefit year compensation listed under Part D of the Benefits Table may be reduced under Section 404(d).

The Benefits Table as found in Section 404(e)(1) of the Law, comprises five columns (denominated Parts A to E), and is employed in determining a beneficiary's weekly and annual benefit rate. The last two columns of the Benefits Table, Parts D and E, delineate the total unemployment benefits to which a claimant is entitled during a benefit year.[10] If a claimant has worked eighteen to twenty-three "credit weeks"[11] during the base year,[12] then claimant's total benefit year compensation is found in Part D. If a claimant has worked twenty-four or more "credit weeks" during the base year, claimant's greater total benefit year compensation is found in Part E. Section 404(c), 43 P.S. §804(c).

Thus, the Benefits Table includes two columns (Parts D and E) denominating the annual entitlement of unemployment benefits. The number of credit weeks worked determines which benefits column is pertinent to claimant in determining the maximum benefit entitlement for a benefit year. Section 404(c).[13]

---

[10] Section 4(b), 43 P.S. §753(b), defines "Benefit Year" as "the fifty-two consecutive week period beginning with the day as of which such 'Valid Application for Benefits' is filed, and thereafter the fifty-two consecutive week period beginning with the day as of which such individual next files a 'Valid Application for Benefits' after the termination of his last preceding benefit year."

[11] Section 4(g.1), 43 P.S. §753(g.1), defines "Credit Week" as "any calendar week in an individual's base year with respect to which he was paid in employment or defined in this act, remuneration of not less than fifty dollars ($50). Only one credit week can be established with respect to any one calendar week.

[12] Section 4(a), 43 P.S. §753(a), defines "Base year" as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year."

[13] It is undisputed and the referees' findings (as affirmed by the Board) confirm that all claimants, *sub judice,* are entitled to the

After providing for the offsetting of specific forms of disqualifying wage-replacement income, Section 404(d) further provides as follows:

> The balance in the employe's compensation account as indicated in *Part D* of the table contained in subsection (e) shall be reduced by his weekly benefit amount without regard to the pension deduction provided herein. (Emphasis supplied.)

43 P.S. §804(d). While Section 404(d)(iii) clearly and unambiguously provides for the *reduction* of a claimant's annual entitlement of unemployment compensation benefits under *Part D* of the Benefits Table, Part E of the Benefits Table is not referenced.

Thus, we conclude, constrained by the express language of Section 404(d), that claimants entitled to maximum unemployment compensation under Part E of the Benefits Table cannot have their annual unemployment compensation benefit reduced by the disqualifying wage replacement income enumerated in Section 404(d)(iii) of the Law.

The Board, however, which does not deny that the Legislature made exclusive reference in Section 404(d) to Part D of the Benefits Table, omitting any reference to Part E, urges this Court to judicially amend the Unemployment Compensation Law by adding Part E through application of the rules of statutory construction as codified in 1 Pa. C. S. §§1901-1991.[14]

It is axiomatic that when the language of a statute is plain and unambiguous and conveys a clear meaning, there is no occasion for resorting to the rules of

---

maximum unemployment compensation amounts listed under Part E of the Benefts Table.

[14] The Statutory Construction Act, Act of December 6, 1972, P.L. 1339, No. 290, *formerly*, 46 P.S. §§531-602, repealed by Section 4 of the Act of December 6, 1972, P.L. 1339, No. 290. A similar act is now found in 1 Pa. C. S. §§1901-1991.

statutory construction and the statute must be given its plain and unambiguous meaning. *Wilderness Industries of Maryland, Inc. v. State Board of Motor Vehicle Manufacturers, Dealers and Salesmen*, 58 Pa. Commonwealth Ct. 127, 427 A.2d 1235 (1981). Thus, we have no reason to be concerned with legislative intent and presumption in the absence of ambiguity. *Daugherty v. Continental Can Co., Inc.*, 226 Pa. Superior Ct. 342, 313 A.2d 276 (1973).

Although the Board claims that the Legislature's omission of any reference to the Part E column in Section 404(d) results in an "ambiguity in application," this Court cannot supply an apparent omission in a statute even though it appears that the omission resulted from the Legislature's mere inadvertence or failure to foresee or contemplate a case in question. *Commonwealth ex rel. Cartwright v. Cartwright*, 350 Pa. 638, 645, 40 A.2d 30, 33 (1945).

Thus, the maxim *"expressio unius est exclusia alterius"* is applicable here. The maxim essentially provides that where certain things are specifically designated in a statute, all omissions should be understood as exclusions. *Commonwealth v. Charles*, 270 Pa. Superior Ct. 280, 411 A.2d 527 (1979). Therefore, since the Unemployment Compensation Law specified two classes of benefit year maximum entitlements, Part D and Part E, and Section 404(d) specifically mentions Part D, but not Part E, we can only conclude that the Legislature intended the omission of Part E to be an exclusion.

All claimants herein are entitled to the maximum amount of compensation found in Part E of the Benefits Table, and all experienced a reduction of their unemployment compensation account balances enumerated under Part E of the Benefits Table. Since the offsetting of disqualifying wage-replacement income denominated under Section 404(d)(iii) against the unem-

ployment account balances found in Part E of the Benefits Table is not provided for in Section 404(d) of the Law, the Board's action is contrary to law and is reversed.

### ORDER

AND Now, the 29th day of April, 1983, the orders of the Unemployment Compensation Board of Review, at Decision Nos. B-189407, B-189409, B-189408, B-189991, B-190046, B-190043, B-190708 and B-191329 are affirmed in part and reversed in part.

The parts of the orders requiring the deduction of disqualifying retirement income from claimants' weekly benefit rates are affirmed.

The parts of the orders requiring the deduction of disqualifying retirement income from claimants' total benefit year entitlement of unemployment compensation benefits denominated under Part E of "Table Specified For The Determination of Rate and Amount of Benefits," Section 404(e)(1), are reversed and the records are remanded for determination of those benefits consistent with this Opinion.

Jurisdiction relinquished.