## Davido v. Porreco Motors Inc.

*James L. Martin* and *Paul J. Ovaltrome,* for plaintiffs.
*Timothy M. Sennett* and *Dale S. Huntley,* for defendants.

LEVIN, *J.*, May 5, 1986 — This matter is before the court on defendant's, Porreco Motors Inc., pre-

liminary objections in the nature of a demurrer, motion to strike, and motion for more specific pleading.

In July 1984, plaintiffs purchased a new Jeep Grand Wagoneer from Porreco Motors Inc., which was manufactured by American Motors Sales Corp. Plaintiffs allege that various nonconformities continue to exist in the vehicle and that repeated attempts to correct them failed. Plaintiffs have notified both the dealer and the manufacturer of their continuing difficulties with the vehicle. Due to their dissatisfaction with the vehicle, plaintiffs filed the present cause of action under the Pennsylvania Lemon Law, 73 P.S. §1951 et seq., the Pennsylvania Uniform Commercial Code, and the Unfair Trade Practices and Consumer Protection Law.

Defendant argues that plaintiffs' complaint fails to set forth a cause of action against it under the Lemon Law. Their theory is that the Lemon Law statute does not permit a cause of action to be brought against a dealer for an infraction of the Lemon Law. The main issue of whether a dealer may be held liable to a consumer under the Pennsylvania Lemon Law is clear, but the answer is most complex.

For all practical purposes, this is a case of first impression. There is yet to be a court decision in Pennsylvania which interprets the statute as to the dealer's responsibility under the act. This is best illustrated by an article by Kurt M. Saunders, Esq., titled The Pennsylvania Automobile Lemon Law — Uncharted Terrain, 57 Pa. B.A.Q., No. 1, 30-7, January 1986. In that article, the following statement appears:

"The principle questions which arise with respect to dealers under the Lemon Law are whether the purchaser has a cause of action against the dealer or whether a dealer may be held liable by the manufacturer for the costs of refund or replacement. Since

the act does not specifically address these questions, the relationship between the manufacturer and dealer with respect to the purchaser's remedies in unclear." Supra, at 33.

Since the act is unclear, it now becomes incumbent on this court to set forth the liability of the dealer under said act.

In a case of first impression, the court should use various methods to interpret a statute, including, but not limited to, applicable case law, legislative history, various texts and most important, the statute itself.

As to using legislative history to interpret the law, unfortunately there was no such history which was of help to the court. Rules of statutory construction and/or analysis of the act itself provide the court with the most assistance in this case. Section 1958 of the Pennsylvania Automobile Lemon Law, the specific section in question, states as follows:

"§ 1958. Civil cause of action.

"Any purchaser of a new motor vehicle who suffers any loss due to nonconformity of such vehicle as a result of the manufacturer's failure to comply with this act may bring a civil action in a court of common pleas and, in addition to other relief, shall be entitled to recover reasonable attorney's fees and all court costs."

Section 1952 separately defines the terms "dealer" and "manufacturer." These definitions indicate an intent by the Legislature to distinguish between the two entities. Section 1957, the only other section referring to dealers, imposes a certain duty on a dealer to provide an itemized service repair statement to a purchaser and to notify the manufacturer of a nonconformity in a new vehicle within seven days after the second repair attempt. Most important, it does

not impose the liability as set forth in section 1958 of the Lemon Law.

Further, section 1955 provides the consumer with a remedy which can only be supplied by the manufacturer.[1] Consistent with other state statutes, this section mandates that the *manfacturer* refund or replace the vehicle. It does not impose this burden upon the dealer. Section 1955 also imposes a duty on the manufacturer when *he*, not the dealer, sells a car which was returned for nonconformities, that the manufacturer give the buyer a particular notice. All of the above presupposes the car is to be returned to the manufacturer and not the dealer, and that the manufacturer and not the dealer is liable for nonconformities and violations of the Lemon Law.

Another method the court used in interpreting the Lemon Law statute was to refer to the applicable case law. The case of *Latella v. Commonwealth Unemployment Bd. of Review*, 74 Pa. Commw. 14, 459 A.2d 464 (1983), stands for the principle that when a statute specifically designates certain things then all omissions should be understood as deliberate exclusions by the Legislature. This same case also provides that a court has no power to insert a word into a statutory provision where the Legislature has failed to supply it. Under these rules, the court is not free to assume that the Legislature intended a consumer cause of action against a dealer under section 1958. A construction analysis of the statute as a whole leads to the conclusion that the Legislature intended to omit any reference to dealers in section 1958.

---

1. 73 P.S. §1955: If the manufacturer fails to repair or correct a nonconformity . . . the manufacturer shall . . . replace the motor vehicle . . . or accept return of the vehicle from the purchaser and refund . . . the full purchase price. . . .

A final method the court used in interpreting the Lemon Law is by reading various text material. An analysis of various state laws appearing in the Uniform Commercial Code Law Journal reports the following:

"Although there are important state-by-state variations, most state lemon laws generally share common characteristics. The laws usually apply to new motor vehicles purchased for personal, family or household purposes, with motor homes normally excluded. They establish a period of statutory coverage that normally extends from the shorter of one year from the date of delivery of the vehicle to the original purchaser or the written warranty period. They require that the manufacturer or dealer must correct a nonconformity that arises once the consumer satisfies the burden of notifying the manufacturer or dealer of the defect. If the defect substantially impairs the value or utility of the vehicle and the defect cannot be repaired within a reasonable number of attempts, the statutes specify that the *manufacturer* must provide either a comparable replacement or a full refund of the purchase price with only a limited setoff for the fact that the vehicle is now used." (emphasis added). Coffinberger & Samuels, Legislative Responses to the Plight of New Car Purchasers, 18 U.C.C.L.J. 168, 176 (1985).

Another article which the court has analyzed is a law review article published by Capital University. "Lemon Laws" in Ohio Turn Sour for the Dealer, 13 Cap. U.L. Rev. 473 (1984). In discussing Ohio's proposed legislation, the article states, ". . . the buyer's remedy rests with the manufacturer and not the dealer, since the manufacturer is the one who built the lemon in the first place." Supra, at 635. A complete reading of both these texts is additional proof

the dealer is not a proper party to be sued under the Pennsylvania Lemon Law as presently enacted.

Plaintiff argues that there may be dealer liability under the theory of agency. At first blush, this analogy seems to be correct. However, a careful examination of the law agency sets forth the principle that if an agent discloses his principal, he is not liable for the principal's action unless there are special circumstances. *Montgomery v. Levy,* 406 Pa. 547, 177 A.2d 448 (1962); *Marano v. Granata,* 147 Pa. Super. 558, 24 A.2d 148 (1942). In the present case, the court can find no special circumstances to bring the case within the exception to the general rule.[2]

In view of the above, the court has no alternative other than to conclude that the Pennsylvania Legislature did not intend by the enactment of the Lemon Law to provide a consumer with a new cause of action against the dealer.

In rendering this opinion, the court is compelled to note that it is most disturbed with the results of its analysis of the Lemon Law. An effective Lemon Law should reduce the inconvenience and frustration the consumer faces in a judicial lawsuit. It is not unreasonable to assume that under certain circumstances a consumer may be left with no remedy under the Lemon Law if for some reason the manufacturer is out of business or facing bankruptcy. In making this statement, the court takes judicial notice of the financial condition of the Chrysler Corporation just a few years back. Another problem could easily arise when a consumer purchases a vehicle manufactured in a foreign country. To correct this obvious omission, the Legislature should give a dis-

---

2. Special exceptions include, but are not limited to, fraud, agent's lack of authority to bind the principal, agent's actions beyond the scope of his authority. *Marano,* supra, at 150.

satisfied car buyer an effective and meaningful remedy that allows for relief against all the parties, particularly those with whom he had dealing. However, the court is bound by the law as it exists.

". . . The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' Wide enough in all conscience in the field of discretion that remains." [3]

The only way this court can aid in serving that ultimate purpose, to-wit, protection of the buyer, is to urge a modification of the current Lemon Law by the Legislature. In an effort to make this a reality, the court is forwarding a copy of this opinion to the Legislature through its local state representative. In so doing, the court is reminded of a quote by a famous jurist, Brockenbrough Lamb:

"We regret that the conclusion reached will prevent a recovery and may thereby defeat the ends of justice in the particular case before us, but however that may be, we must declare the law as we find it written and comfort ourselves with the confident belief that in its results it will promote the ends of justice to all." [4]

---

3. Benjamin N. Cardozo, Some Excerpts From "The Nature of the Judicial Process," in Handbook for Judges 82 (1961).

4. Brockenbrough Lamb, The Duty of Judges: A Government of Laws and Not of Men, in Handbook for Judges 93 (1961).

Hopefully, the net result of this opinion will provide the necessary impetus to have the Legislature modify the law. If the Legislature sees fit to do so, the ends of justice will be promoted.

In addition, defendant Porreco Motors Inc., filed preliminary objections in the form of a motion to strike and/or motion for more specific pleading under Pa.R.C.P. 1019(a) and 1019(b). Specifically, the motions argue that plaintiff's complaint fails to set forth sufficient facts to state a cause of action for breach of a written warranty and a violation of the Unfair Trade Practices and Consumer Protection Laws. Suffice it to say these objections are well taken. Plaintiff should amend his complaint to conform to the objections.

## ORDER

And now, this May 9, 1986, it is hereby ordered, adjudged and decreed as follows:

(1) That the demurrer to plaintiffs' first cause of action is sustained.

(2) That the motion to strike and the motion for more specific pleadings regarding plaintiffs' second and third cause of action are sustained, with leave granted to plaintiffs to amend their complaint to comply with said objections, to be filed within 30 days.