**William EHMAN, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2001.
Decided May 10, 2001.

John Stember, Pittsburgh, for petitioner.

Sheila M. Markley, Canton, OH, for intervenor, Latrobe Steel Co.

Before LEADBETTER, Judge, FLAHERTY, Senior Judge, MIRARCHI, Jr., Senior Judge.

FLAHERTY, Senior Judge.

William Ehman petitions for review of an order of the Unemployment Compensation Board of Review (Board) that reversed the order of an unemployment compensation referee and concluded that the pension that Ehman receives from the Latrobe Steel Company (Employer) should be 100 percent deductible from the unemployment compensation benefits for which he is eligible. For the reasons stated, we reverse.

Ehman worked for Employer for 37 years, until his last day of work on April 8, 1999. He also worked for the United Steelworkers of America (Union), serving as the elected president of Local Union No. 1537, which represents Employer's steelworkers. He was laid off from the Union in September 1999, and he established financial eligibility for unemployment compensation of $393 per week by application filed October 10, 1999. Ehman retired from Employer effective in September 1999, and he received his first pension benefit, equaling $2450.49 per month, effective December 5, 1999. By notice mailed January 26, 2000, the Job Center informed Ehman that his weekly benefit rate of $393 was reduced by $393 per week, which was listed as the prorated weekly amount for his pension, resulting in an adjusted weekly benefit rate of $0, pursuant to Section 404(d)(2) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d)(2). Section 404(d)(2)(i) provides that for any week in which an individual is receiving a pension, "the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the pro-rated weekly amount of the pension as determined under subclause (ii)." Section 404(d)(2)(ii) provides:

If the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. If the pension is contributed to by the individual, in any amount, then fifty per centum (50%) of the pro-rated weekly amount of the pension shall be deducted.

Ehman appealed, and at a hearing he testified regarding negotiations in which

he participated between the Union and Employer commencing in June 1980 for a collective bargaining agreement. The referee found that the Union agreed that a previously negotiated cost of living adjustment (COLA) of $0.33 per hour, which Union members began receiving effective May 1, 1999, would not be paid to the employees as wages after August 1, 1980 but would be used in perpetuity to increase the benefits of past and present employees. One of the benefit programs that was affected by the addition of thousands of dollars annually, based upon the withholding of the $0.33 per hour since 1980, was the pension benefit program of which Ehman is presently a recipient. Because Ehman's pension was based upon a formula encompassing years of work after 1980 and because his paycheck had been reduced by $0.33 per hour during that period, the referee concluded that the 50 percent deduction of Section 404(d)(2)(ii) applied.

On appeal by Employer and by the Bureau of Compensation Benefits and Allowances, the Board found that the Union in 1980 negotiated an offset of $0.33 of the negotiated COLA to be allocated toward the pension benefits for past and future retirees. Another $0.70 per hour from three other COLA increases was rolled into wage scale rates and added to current wages. The Union's position during negotiations was intended to increase benefits for previous retirees and surviving spouses and to propose improvements for those who would retire after August 1, 1980. Ehman, the Board found, did not retire under the 1980 pension plan because there had been 8 to 10 agreements negotiated after 1980 but before he retired, and the pension plan document is revised each time a new collectively bargained pension agreement is entered into between Employer and the Union.

The pension plan referred to in the 1980 agreement expressly indicated that the employer would fund the plan. None of the reporting and disclosure requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, or of the Internal Revenue Code for identification of employee contributions had been used by Employer, which consistently reported that only employer contributions were used for the pension plan. There was no indication that Ehman, as president of the local union, had contested these representations. When Ehman retired in 1999, the formula used to determine his pension payments did not utilize any earnings before 1989.

■ The Board concluded that the wording of Section 404(d)(2), as amended, revealed an intent of the legislature that the pension offset provision be extremely inclusive, that is, applying to most forms of retirement income received. The Board cited *Latella v. Unemployment Compensation Board of Review*, 74 Pa. Cmwlth. 14, 459 A.2d 464 (1983), where the Court stated that the former Section 404(d)(iii), *formerly* 43 P.S. § 804(d)(iii), deleted by Section 4 of the Act of October 19, 1988, P.L. 818, which reduced claimants' unemployment compensation benefits by 100 percent of their Social Security pension benefits, regardless of whether they had contributed to those benefits, was rationally related to the legitimate government objectives of promoting the fiscal integrity of the unemployment compensation fund and of eliminating payment of duplicative, "windfall" benefits. In *Lacks v. Unemployment Compensation Board of Review*, 164 Pa.Cmwlth. 215, 642 A.2d 603 (1994), this Court stated that the current Section 404(d)(2) is nearly identical to the former Section 404(d)(iii) and has the same objectives. The Board stated that the "give back" of the COLA was

not a contribution for purposes of Section 404(d)(2). It held that Employer made all contributions to the pension fund and held that Ehman was ineligible for benefits.[1]

Ehman questions whether he "contributed" to his pension within the meaning of Section 404(d)(2)(ii), where his Union agreed to give back $0.33 per hour of wages that he and other Union members had been receiving in order to fund, among other things, an increase in pension benefits. Ehman first notes that in *Penn Hills School District v. Unemployment Compensation Board of Review,* 496 Pa. 620, 437 A.2d 1213 (1981), the Supreme Court stressed that a broad and liberal construction of the Act is required and that this means that the question to be considered is whether the Law specifically excludes a claimant. The Board expressly found in Finding of Fact No. 5 that "[i]n 1980 the Union and the workers by negotiation, elected to provide a portion of their income to the pension agreements for both past and future pensioners," and it stated also that "a reallocation of part of the monies claimant would have received was redirected to the Pension Plan." Board's Decision, p. 7.

The Board nonetheless concluded that regarding this as a "contribution" would be contrary to the legislative intent. As Ehman points out, however, the Board's citation to *Latella* and *Lacks* for the principle that the Section 404(d)(2) pension offset includes virtually all retirement income ignores the legislature's plain intent in adopting Section 404(d)(2)(ii) to modify the previous dollar-for-dollar reductions for pension benefits regardless of whether employees contributed to them. In *Latella* and *Lacks* the issue was an equal protec-

tion challenge to the offsetting of Social Security pensions but not some other forms of income, not the interpretation of the 50 percent offset. Ehman notes that the legislature placed no minimum amount or time limitation upon the contribution that requires application of the 50 percent offset rather than the 100 percent offset.

Further, Ehman contends that "contribution" must be liberally construed in service of the rule that eligibility and benefits provisions of the Law are to be broadly and liberally construed. For example, in *Lopata v. Unemployment Compensation Board of Review,* 507 Pa. 570, 493 A.2d 657 (1985), the Supreme Court rejected any single interpretation of the statutory term "credit week," where counting three days with earnings of a week that overlapped a quarter outside a claimant's base year was not expressly prohibited in the statute, and it would result in eligibility. In *Cugini v. Unemployment Compensation Board of Review,* 511 Pa. 264, 274, 512 A.2d 1169, 1173 (1986), the court rejected treating severance wages as "paid" only when belatedly received, stating that "unless the provisions of the law unmistakably compel the conclusion that benefits are to be denied, a remedy is to be found consonant with the purposes of the law, i.e., the granting of compensation." Finally, Ehman argues that it is not surprising that Employer's filings under ERISA state that it was the contributor. Ehman gave back the COLA payment with the understanding that Employer would do exactly what it has done, i.e., increase pension benefits by changing the formula for the defined benefit plan so as to pay increased benefits. Ehman contends that Employer incorrectly seeks to read into the Law a

---

1. Our review of a decision of the Board is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether findings of fact are supported by substantial evidence. *Sheets v. Unemployment Compensation Board of Review,* 708 A.2d 884 (Pa.Cmwlth.1998).

requirement that a contribution under Section 404(d)(2)(ii) must be a "contribution" as defined by ERISA.

◼ Employer in response first asserts that, as a result of the 1980 Agreement, it no longer had any obligation to pay the $0.33 per hour COLA; instead it had an obligation to pay enhanced pension benefits from its own assets. It contends that preemption applies under 29 U.S.C. § 1144(a), which provides that provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." Because Pennsylvania law is silent on what constitutes employee contributions, the Court should look to federal law. In 26 U.S.C. § 414(h)(1) it is provided that any amount contributed to a qualified plan shall not be treated as having been made by the employer if it is designated as an employee contribution. Employer quotes a United States Tax Court memorandum opinion, *Alderman v. Commissioner*, T.C. Memo.1988–49, which states: "The distinction between an employER and an employEE contribution is important for Federal income tax purposes as it affects the timing of inclusion in the employee's taxable income of those contributions."

Employer notes further that 29 U.S.C. § 1102(a) requires that every employee benefit plan be established by a written instrument and that no unwritten portion or amendment is enforceable. Here the only references in the pension plan and pension agreements are to contributions by Employer. In addition, the annual report required by ERISA and by federal tax law, the periodic audit conducted of the pension plan, the summary plan description provided to participants and W–2 Forms provided to Ehman and others did not show contributions made by employees. Employer notes that Ehman did not present evidence that he paid tax on the $0.33 per hour COLA payments. It argues that the Internal Revenue Code contemplates contributions through payroll deductions or delivery of a check or cash to the plan administrator, not the use of an intangible, such as the decision of a collective bargaining agent to trade an employee's right to a COLA in favor of retirement benefits. Also, Employer maintains that Ehman's own evidence shows that enhanced pension benefits were for those already retired and those who retired under the 1980 pension agreement, categories that do not include Ehman.

Employer states that consistency in the unemployment compensation system is an important goal, and it asserts that if a contractual exchange of benefits is permitted to substitute for an actual monetary contribution, then all employees may argue that they have made contributions. It also contends that the remedial purpose of the Law to provide unemployment benefits for persons unemployed through no fault of their own is not served by permitting an unreduced benefit to a claimant who is receiving pension benefits determined through negotiated wage and benefit trade-offs. Employer cites cases approving 100 percent offsets, such as *Egan v. Unemployment Compensation Board of Review*, 83 Pa.Cmwlth. 562, 477 A.2d 922 (1984), although they interpreted the pension offset provision before it was amended in 1988 to reduce the offset to 50 percent. Finally, Employer states that even if Ehman is regarded as having contributed to the pension plan during the term of the 1980 pension agreement, there is no evidence that the Union continued to agree to give up the COLA payment or that it tried to get it back into the contract; therefore,

any contribution applied only in that period.

■ The Court agrees with Ehman that under the unusual facts of this case he is properly regarded as having contributed to his pension for purposes of Section 404(d)(d)(ii). First, we note that Employer's repeated assertions that any contributions made during the term of the 1980 pension agreement were limited to its duration ignores the financial nature of pension funds. Although new agreements were successively negotiated concerning the pension plan, the money in the fund from earlier sources remained. There is no suggestion that the fund was reduced to zero before each new agreement took effect. As Ehman notes, the Law places no time limits on contributions; prior contributions must be recognized.

The central issue in this case is the nature and effect of the trade-off that was negotiated in 1980. We note that the exchange did involve something tangible on the Union's side. Employees including Ehman were already receiving the $0.33 per hour COLA under the previous agreement. The other COLA payments under that agreement were rolled into base wages under the new agreement, but Employer proposed the quid pro quo of exchanging that particular COLA payment for other benefits. As the newsletter from Employer titled "Straight Talk from J.W. Pischke" states, the May 1, 1980 COLA would be discontinued, and "[t]his amount will be applied to other benefit improvements." Claimant's Exhibit No. 5, p. 2. Thus the Union, and Ehman, gave up something of present value to get something of present value.

In effect, the employees were simply using the COLA monies which they would otherwise have surely earned, to be put into a kind of deferred compensation plan under which the Employer agreed to defer what would have been their 33 cents per hour of earnings from their future paychecks and place it in their pension benefits from which they would later receive it and pay taxes on it then. It is folly for Employer to even try to limit such an overwhelming concession by the union to the term of the 1980 contract when the COLA had obviously been of such importance to the employees they negotiated it back into the contract nine years before after an eleven-year absence. Employer offers no evidence or even suggestion of how it would otherwise have negotiated 33 cents per hour of COLA benefits out of the contract again.

In addition, the situation was untypical. Ehman testified without contradiction that, although the COLA had been given up in bargaining in 1959 and was restored in 1971, never before and never since had the Union negotiated the give back of a particular adjustment with a set monetary value. N.T., p. 24. This was different from swapping inchoate proposals during bargaining. In a very real sense, Employer acted as a conduit to funnel money that otherwise would have gone directly into employee's paychecks into the pension fund and other benefit programs, as is reflected in the Board's language that a "reallocation of part of the monies claimant would have received was redirected to the Pension Plan."[2]

■ We agree with Ehman's position in his reply brief that ERISA does not preempt our application of Section 404(d)(2) of the Law. In *Martco Partner-*

---

**2.** Contrary to Employer's implication, employees hired after the 1980 agreement took effect, i.e., after the new base wage scale was established, could not claim to have given up pay in order to obtain the pension benefits offered by Employer.

*ship v. Lincoln National Life Ins. Co.*, 86 F.3d 459 (5th Cir.1996), the court noted that preemption does not occur if a state law has only a tenuous or peripheral connection with a covered plan, and it held that a state statute permitting offsets of workers' compensation payments did not modify or regulate the ERISA plan. We do not agree with Employer that the failure to treat the money at issue here as a direct employee contribution for ERISA reporting and related purposes means that the money may not be regarded as an employee contribution for purposes of Section 404(d)(2)(ii). The memorandum Tax Court case cited by Employer, *Alderman v. Commissioner*, notes that where mandatory employee contributions to a plan are "picked up" by a state or local government employer but the employer withholds that amount from the employees' salary, the effect is the same as employee contributions under 26 U.S.C. § 414(h)(2). Ehman is correct that the principle of liberal interpretation of the Law to allow benefits unless they are expressly excluded, *see Cugini*, applies to the determination at hand. In contrast, the Board expressly applied a very constrained interpretation in service of its erroneous perception that Section 404(d)(2), despite its amendment to include the 50 percent reduction provision, is intended to require full offset of virtually all pension income. Accordingly, the order of the Board is reversed.

### ORDER

AND NOW, this 10th day of May, 2001, the order of the Unemployment Compensation Board of Review at No. B–387035, dated June 14, 2000, is reversed.

Judge LEADBETTER dissents.