Bridon American Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor & Industry, Respondent.

Argued May 11, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Robert D. Stets, McNees, Wallace and Nurick*, for petitioner.

*Sean F. Creeger*, with him *Karen Durkin*, Assistant Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 12, 1983:

Bridon American Corporation, an employer subject to the Unemployment Compensation Law (Law),[1] petitions for review of an Employer Accounts Review Board (Board) order affirming the Department of Labor and Industry, Office of Employment Security's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-914.

(OES) denial of an appeal from Employer's assigned, upwardly revised contribution (tax) rate for calendar and taxable year 1980.

On April 22, 1980, Employer elected to adjust his negative reserve account balance[2] to zero for calendar year 1980 contribution rate purposes pursuant to Section 302(c) of the Law, 43 P.S. §782.[3] The OES initially approved Employer's debit reserve account balance adjustment request, and, pursuant to Section

---

[2] The "reserve account balance" is the difference between an employer's annual contributions to the unemployment compensation fund less benefit costs charged during the same period ascertained as of the computation date (June thirtieth of the year preceding the effective date of new rate of contribution, which is January first of the succeeding year).

On June 30, 1979, Employer had a debit reserve account balance of $472,175.00. A credit balance in a reserve account results in a lower employer contribution rate since the reserve account balance is used in determining the "Funding Factor," which is one of several factors employed in determining the annual contribution rate. Conversely, a debit reserve account balance results in a higher contribution rate. *See,* Section 301.1 of the Law, 43 P.S. §781.1.

[3] *Retroactive to January 1, 1980,* Section 302(c) of the Law, *as amended* by Section 7 of the Act of July 10, 1980, P.L. 521, No. 108, presently provides in pertinent part:

> If, as of the computation date, the amounts charged to [an employer's] reserve account exceed the amounts credited by an amount equivalent to more than ten percentum of his average annual payroll, *the employer may elect,* subject to the provisions of section 301.1(f) *... to have his reserve account balance adjusted to a negative balance equal to ten percentum of his average annual payroll.* (Emphasis supplied.)

*Prior to January 1, 1980,* Section 302(c) provided in pertinent part:

> If, as of the computation date, the amounts charged to [an employer's] reserve account are found to be greater than the amounts credited, *the employer may elect,* subject to the provisions of section 301.1(f) *... to have his reserve account balance adjusted to zero.* (Emphasis supplied.)

301.1(f), 43 P.S. §781.1(f),[4] a maximum contribution rate of 4.0% (four per centum) was imposed for calendar years 1980, 1981 and 1982. Invoking the Act 108-1980 amendments, OES subsequently revised Employer's contribution rate to the new maximum of 6.45% (six point forty-five hundredths per centum) and limited the debit reserve account balance adjustment "to a negative balance equal to ten per centum of [Employer's] average annual payroll." Raising statutory and constitutional arguments, Employer requested a review and redetermination of the 1980 contribution rate of the Board which affirmed the recalculated maximum contribution rate. This appeal followed.

---

[4] Both the Employer and, until it issued a revised maximum contribution rate, OES, relied upon Section 301.1(f) of the Law as it pertinently read in its unamended form *prior to January 1, 1980*:

> *An employer whose reserve account balance is adjusted to zero in accordance with the provisions of section 302(c) of this act* shall not be eligible for a reduced rate of contributions under the provisions of this act for the three consecutive calendar years following the computation date with respect to which the application for adjustment was made and *shall pay contributions at the rate of four per centum for each of such three calendar years*. (Emphasis added.)

*Effective January 1, 1980*, Section 301.1(f) of the Law, *as amended*, by Section 5 of the Act of July 10, 1980, P.L. 521, No. 108, currently provides in pertinent part:

> *An employer whose reserve account balance is adjusted after January 1, 1980 in accordance with the provisions of section 302(c) of this act* shall not be eligible for a reduced rate of contributions ... for the three consecutive calendar years following the computation date with respect to which the application for adjustment was made and *shall pay contributions at the maximum rate specified under subsection (a) of this section and sections 301.2 and 301.3 for three years*. (Emphasis added.) (Footnotes omitted.)

Employer first maintains that OES erroneously applied and misinterpreted the Act 108-1980 amendments in recalculating Employer's contribution rate to 6.45% (six point forty-five hundredths per centum). Amended Section 301.1(f) pertinently states that "[a]n employer whose reserve account balance is *adjusted* after January 1, 1980 ... shall pay contributions at the maximum rate specified." (Emphasis added.) The issue, therefore, is whether the Employer by *electing* to adjust his negative reserve account balance in April 1980, the adjustment being *effective* as of June 30, 1979,[5] actually adjusted his reserve account balance after January 1, 1980, thus properly subjecting him to the new, higher maximum contribution rate mandated by amended Section 301.1(f).

Although Employer *elected* to adjust his debit reserve account balance on April 22, 1980, the OES *adjusted* Employer's balance as of June 30, 1979, the computation date. From this we conclude that June 30, 1979, is both the computation and adjustment date for Employer's calendar year contribution rate purposes. Since Employer's reserve account balance was adjusted effective June 30, 1979, six months prior to January 1, 1980, the effective date of amended Section 301.1(f), that section is not applicable here.

This case is directly controlled, however, by Section 301.1(f.1), of the Law, 43 P.S. §781.1(f.1), added by Section 5 of the Act of July 10, 1980, P.L. 521, No. 108, which provides the following:

Notwithstanding any other provisions of this act, employers who elected to have their negative reserve account balance adjusted for taxable years 1978, 1979 or *1980* will be liable

---

[5] By correspondence and "Contribution Rate Notices" Employer was informed by OES that his debit reserve account balance was being "adjusted as of June 30, 1979, for calendar year 1980 rate purposes."

for contributions at the maximum rate specified in Section 301.1 and as determined under Sections 301.2 and 301.3. (Emphasis added.) (Footnotes omitted.)

Since Employer elected to have his debit reserve account balance adjusted for calendar year 1980 contribution rate purposes, Section 301.1(f.1) governs and authorizes the recalculation of Employer's 1980 contribution rate from the 4.0% (four per centum) maximum to the 6.45% (six and forty-five hundredths per centum) maximum rate. *See, Gulf & Western Corporation v. Department of Labor and Industry*, 74 Pa. Commonwealth Ct. 493, 459 A.2d 1369 (1983).

The question remains whether Employer's debit reserve account is adjusted to zero or negative 10% (ten per centum) of his average annual payroll as of June 30, 1979. Amended Section 302(c) of the Law, which provides for a negative reserve account balance adjustment to negative 10% (ten per centum) of average annual payroll has an effective date of January 1, 1980. The financial posture of a reserve account balance, fixed as of the computation date (June thirtieth of the preceding year), determines an employer's eligibility for account balance adjustment. Although Employer's adjustment election occurred in April 1980 subsequent to the effective date of amended Section 302(c), January 1, 1980, Employer's reserve account *status* as of June 30, 1979 (the computation date) rendered Employer eligible for balance adjustment relief. Inasmuch as Employer's reserve account balance level determined as of *June 30, 1979, the computation date*, permitted an election, and such date is six months prior to the January 1, 1980 effective date of amended Section 302(c), nonamended Section 302(c) is operative and Employer's debit reserve account

balance must be adjusted to zero as of June 30, 1979 for taxable year 1980.[6]

Employer next contends that the retroactive application of Section 301.1(f.1) is violative of the uniform tax clause of the Pennsylvania Constitution, Pa. Const. Art. VIII, §1, and the due process and equal protection guarantees of the United States Constitution. The heavy burden of demonstrating that a tax classification is unreasonable is on the party challenging the classification. *Commonwealth v. Life Assurance Co. of Pennsylvania*, 419 Pa. 370, 214 A.2d 209 (1965). Furthermore, while the legislature may create different taxation classifications, substantial uniformity must be maintained within each class. *Commonwealth v. After Six, Incorporated*, 489 Pa. 69, 413 A.2d 1017 (1980). Employer must therefore show that he was not treated in a substantially uniform manner vis-a-vis those employers who elected to adjust their debit reserve account balances for 1978, 1979 and 1980. The Employer having failed to meet this burden, we find the constitutional objections to be without merit. *See, Gulf & Western*.

Lastly, Employer maintains that upon the OES' approval of Employer's election request to adjust the debit reserve account balance to zero, a contract arose obligating the Employer to pay and the Board to accept the adjusted to zero balance for 1980 and 4.0% (four per centum) maximum contribution rate for three years. Thus both the Board and the legislature are prohibited by Art. 1, §17 of the Pennsylvania Constitution and Art. 1, §10 of the United States Constitution from impairing obligations arising from the "contractual" relationship.

---

[6] Reserve account balance adjustment limitations are established by amended Section 302(c) for reserve accounts which, as of computation dates occurring subsequent to January 1, 1980, are deemed eligible for adjustment assistance.

By statute, the Legislature retroactively modified Employer's tax obligation. The Legislature, however, "is free to amend the [Law] in any particular, and constitutionally accord its amendments retroactive effect." *Deal Unemployment Compensation Case*, 159 Pa. Superior Ct. 577, 581, 49 A.2d 278, 280 (1946); Section 901, 43 P.S. §881. Therefore any obligations which may have arisen are subject to legislative modification pursuant to Section 901. *Gulf & Western*.

Accordingly, we hold that Employer is subject to Section 301.1(f.1) of the Law and is responsible for the modified contribution rate recalculated pursuant to that subsection for taxable year 1980. Furthermore, Employer's debit reserve account balance shall be adjusted to zero as of June 30, 1979 for taxable year 1980. We emphasize, however, that Section 301.1(f.1) determines Employer's contribution rate solely for taxable year 1980, and that subsequent taxable year contribution rate determinations, computed as a result of adjustments of Employer's debit reserve account balance made pursuant to amended Section 302(c) and therefore effected after January 1, 1980, are governed by Section 301.1(f) of the Law.

ORDER

AND Now, this 12th day of July, 1983, the order of the Department of Labor and Industry, Office of Employment Security, Employer Accounts Review Board, dated January 14, 1982, is affirmed in part and reversed in part. The part of the order sustaining the 6.45% contribution rate assigned to petitioner for taxable and calendar year 1980 is affirmed. The part of the order disallowing petitioner's election to adjust its debit reserve account balance to zero as of June 30, 1979, is reversed.