Caroline Tartaglia, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

580

Argued June 2, 1980, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Chester B. Smith,* for petitioner.

*Howard Ulan,* Assistant Attorney General, for respondent.

OPINION BY JUDGE ROGERS, July 9, 1980:

Caroline Tartaglia has appealed from an order of the Department of Public Welfare (DPW) upholding the decision of a hearing examiner refusing her re-

quest for abatement or modification of liability for the cost of her care and maintenance from May 1, 1975 to June 20, 1976 while she was a resident of Hamburg Center.

Ms. Tartaglia is severely mentally retarded due to a glandular hypothroidism known as cretinism. She has an I.Q. of 25. She has been a resident of various state institutions from 1930 to 1976. From 1960 until 1976, Ms. Tartaglia was a resident of Hamburg Center. In June 1976, Ms. Tartaglia was discharged from Hamburg Center to a community group home. She is represented in this appeal by Northwestern Legal Services whose services in her behalf, we were told at argument, were solicited by the person or persons in charge of the community group home where she now lives. The arguments made in this appeal are, of course, those of her conscientious lawyers thus obtained.

In 1960, Ms. Tartaglia became the recipient of Social Security benefits, and in 1965 she became the recipient of Railroad Retirement benefits. These benefits totalled approximately $178.00 a month. At or about the time each of these benefits were first received, the State's revenue agent at Hamburg Center was appointed her representative payee. *See* 20 C.F.R. §§266.5, 404.1601. During the period here at issue—May 1, 1975 to June 20, 1976—the revenue agent, acting pursuant to Section 501 of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended,* 50 P.S. §4501, and DPW regulations, 55 Pa. Code §5404.4,[1] charged part of the cost of her care and maintenance against her benefits. Under the assessment procedures then in effect, the revenue agent

---

[1] Currently appears in 6 Pa. Bull. 2398 (1976).

assessed fifty percent (50%) of a resident's benefits for the cost of his or her care and maintenance. *Id.* This money, however, was not actually paid over to the Commonwealth; it was placed in an interest bearing so-called guardian account and a notation of charges for costs was made by the revenue agent.[2] The remaining fifty percent (50%) of the benefits was placed in a fund to be used for such of her personal needs as might be unmet by Hamburg Center, such as additional clothing, trips and special services. *Id.* Whenever the personal fund had a balance of $500[3] the revenue agent placed the entire amount of benefits thereafter in the guardian account and he assessed this entire amount for the costs of care and maintenance. When the balance of the personal fund was $400 or less, the revenue agent resumed depositing 50% of the resident's benefits in the personal fund until the balance was again $500, and thereafter all benefits would again be assessed for the cost of care and maintenance. Upon certain conditions obtaining, including separation from the state facility, the guardian fund and the unused personal funds would be turned over to the resident and at this time the Commonwealth could bill the former resident for the assessed costs of care and maintenance.

When Ms. Tartaglia was discharged from Hamburg Center to a community group home in June 1975, the Commonwealth sent her a check for $2,456.38, the

---

[2] Prior to *Vecchione v. Wohlgemuth*, 377 F. Supp. 1361 (E.D. Pa. 1974), the money representing the assessed liability of a resident was collected by the revenue agent as collection agency for the Commonwealth under Section 506(b) of the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4506(b). *Vecchione* held this practice to be an unconstitutional deprivation of property without due process. See discussion of *Vecchione*, *infra*.

[3] The ceiling level of a resident's personal fund has subsequently been raised to $1500. *See* 6 Pa. Bull. 2398 (1976).

amount accrued in her accounts, and a bill for $2,-412.20, representing the cost as assessed of her care and maintenance from May 1, 1975 to June 20, 1976.[4] Ms. Tartaglia, by counsel, requested the Secretary of DPW to abate or modify her bill pursuant to Section 504(a) of the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4504(a). The request was denied. An appeal from the Secretary's decision was taken and a hearing conducted at which it was contended in behalf of Ms. Tartaglia that the manner in which her benefits were charged with her costs of maintenance constituted a breach of a fiduciary duty and violation of the pertinent rules and regulations by the revenue agent and that she had met the requirements of Section 504(a) for abatement or modification of the assessment of her liability. The hearing examiner concluded that Ms. Tartaglia failed to sustain her burden of proof on any of the issues raised by her and therefore affirmed the Secretary's decision. DPW affirmed that decision.

It is first contended on behalf of Ms. Tartaglia that the revenue agent breached his duty as a fiduciary by acting as representative payee for her Social Security and Railroad Retirement benefits and as a bill collector for the Commonwealth. We need not decide whether a fiduciary relationship existed between Ms. Tartaglia and the revenue agent, for if it did, no breach was committed. In the past, the revenue agent did act as a bill collector for the Commonwealth by actually subtracting from income benefits due a resident of a state mental facility the cost of the resident's care and maintenance and transferring this amount to the Commonwealth. Section

---

[4] Ms. Tartaglia was charged only for 19.5% of the Commonwealth's total cost for her care and maintenance from May 1, 1975 to June 20, 1976.

506 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4506. This practice was declared unconstitutional on due process grounds in *Vecchione v. Wohlgemuth*, 377 F. Supp. 1361 (E.D. Pa. 1974). After *Vecchione*, the procedures were changed. The revenue agent no longer deducted money from a resident's benefits; instead, all benefits were deposited in a guardian account for the resident and the revenue agent merely keeps a record of charges for the resident's care and maintenance. The money is given to the resident on her discharge. Hence, the revenue agent is not a bill collector but a bookkeeper. It is conceded that the books were properly kept and that all of Ms. Tartaglia's money due was sent to her.

It is next argued that DPW erred in not finding that the revenue agent failed to do his duty to expend Ms. Tartaglia's Social Security and Railroad Retirement benefits in meeting her needs while she was at Hamburg Center. 20 C.F.R. §§266.7, 404.1604. It is said that if the revenue agent had done his duty in meeting her needs, her personal fund of $500 would have consistently been reduced, thereby requiring replenishment from her benefits and that instead of assessing all her benefits with charges for her care and maintenance, there would have been times when the whole fifty percent (50%) of her benefits would have been used in her personal fund and no more than fifty percent (50%) could have been assessed for costs. The weakness of this position is that Ms. Tartaglia's protagonists failed to carry her burden of proving that she had unmet needs while at Hamburg Center. The only competent evidence in the record consists of notations made by staff members at Hamburg Center recommending speech and hearing therapy which was not regularly available at Hamburg Center. There was no competent testimony offered to

explain the notations, nor is there any evidence in the record which points to the existence of unmet needs. The hearing examiner, as fact finder, could and did on this record properly find that the burden of proof was not carried. *See Palmer v. Department of Public Welfare,* 5 Pa. Commonwealth Ct. 407, 413, 291 A.2d 313, 317 (1972).

It is next contended that DPW should have the burden of proving that the revenue agent met Ms. Tartaglia's needs rather than Ms. Tartaglia having to prove that her needs were unmet. This argument rests upon a claim that all relevant records and witnesses necessary to prove the existence or nonexistence of unmet needs is under the control of Hamburg Center and thus the Commonwealth. We disagree. The Commonwealth had the initial burden of proving Ms. Tartaglia's liability for her care and maintenance while at Hamburg Center. *Department of Public Welfare v. Wieand,* 26 Pa. Commonwealth Ct. 179, 362 A.2d 1108 (1976). It is agreed that DPW's assessment is mathematically correct. This was DPW's only burden; clearly, the burden then fell upon Ms. Tartaglia to prove the existence of grounds—here, unmet needs—which would show the necessity for the abatement or modification of liability. Further, if other records and witnesses in the control of the Commonwealth were necessary to her case, their discovery and production could have been accomplished. Section 520 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §200.

Ms. Tartaglia also claims that the DPW erred in failing to find that the imposition of liability for her care and maintenance at Hamburg Center would result in a substantial hardship for her, would nullify the results of her care and treatment at Hamburg

Center and would result in a greater financial burden upon the people of the Commonwealth. Any one of these grounds, if proven, would allow abatement or modification of Ms. Tartaglia's liability. Section 504(a) of the Mental Health and Mental Retardation Act of 1966, 50 P.S. §4504(a). The hearing examiner determined that Ms. Tartaglia's assessed liability could be paid from her accumulated benefits and her current benefits income thus would remain intact. Therefore, the hearing examiner concluded, no substantial hardship was proven. We agree with this analysis.

Ms. Tartaglia also argues that the imposition of any liability for her care and maintenance would deprive her of money necessary to pursue continuing treatment in order to avoid both nullification of the Commonwealth's past habilitative efforts and regression to the point where readmission to a state institution and greater reliance upon state services is required. The hearing examiner concluded that Ms. Tartaglia failed to prove that either of these results would obtain if abatement or modification was denied. The only testimony offered by Ms. Tartaglia on these issues was that of the administrator of the community group home at which Ms. Tartaglia now resides. As recognized at the hearing, this witness's educational and occupational training lay solely in managerial areas, and he thus lacked the necessary qualifications to render competent and credible opinions on these issues which inherently involved medical evaluation. The hearing examiner was free to attach as much or as little weight to this testimony as he believed it deserved. *Palmer v. Department of Public Welfare, supra.* Therefore, we cannot say on this record that the hearing examiner erred by refusing to abate liability for this reason.

Finally, Ms. Tartaglia contends that the hearing examiner violated her due process rights to a fair hearing by refusing to admit certain testimony of Ms. Tartaglia's mother and by refusing to order a medical examination of Ms. Tartaglia at the Commonwealth's expense. The excluded testimony concerned Ms. Tartaglia's condition upon her initial admission to state mental institutions in 1931. This testimony was offered to prove that in some respects Ms. Tartaglia's condition has remained unchanged. Therefore, it is argued, Ms. Tartaglia did not receive adequate treatment in the state institution and should now have her liability for costs abated or modified to enable her to secure treatment. The hearing examiner, upon objection by DPW, concluded that Ms. Tartaglia's condition forty years prior to the billing period here at issue was irrelevant in view of the absence of competent evidence that her past condition could somehow have been improved. We agree.

Ms. Tartaglia relies upon 55 Pa. Code §275.4(f)(5) as authority for the proposition that the hearing examiner should have ordered a medical examination at the Commonwealth's expense. This reliance is misplaced. The cited regulation applies to hearings involving recipients of state assistance funds. *See* 55 Pa. Code §101.1(a). It has no application to proceedings under the Mental Health and Mental Retardation Act of 1966. Moreover, no medical examination was requested in the course of these proceedings.

Accordingly, we enter the following:

## Order

And Now, this 9th day of July, 1980, the order of the Department of Public Welfare, dated March 6, 1979, denying the appeal of Caroline Tartaglia from

a decision of a hearing examiner denying Caroline Tartaglia abatement or modification of her assessed liability for the costs of her care and maintenance at Hamburg Center from May 1, 1975 to June 20, 1976, is affirmed.