Elaine Martin, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 7, 1981, before Judges MENCER, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*John Stember,* with him *Joseph Mesar,* for petitioner.

*Karen Durkin,* Associate Counsel, with her *James K. Bradley,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE MENCER, January 6, 1982:

Elaine Martin (claimant) has appealed from a decision of the Unemployment Compensation Board of Review (Board) which denied her benefits for failing to meet the financial qualification provisions of Section 404 of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804. We affirm.

Claimant had been employed for 3 1/2 years by the National Biscuit Company when she was validly separated from employment. She filed an application for unemployment compensation benefits with an effective date of April 22, 1979. Because of sporadic

layoffs, claimant averaged approximately 5 months of employment per year. The Board affirmed a determination of the referee finding claimant ineligible for benefits because of insufficient base year wages. This appeal followed.

In determining claimant's eligibility for compensation, the Board referred to the following portions of the Table Specified for the Determination of Rate and Amount of Benefits (Table), Section 404(e)(1) of the Act, 43 P.S. §804(e)(1):

| Part A Highest Quarterly Wage | Part B Rate of Compensation | Part C Qualifying Wages | Part D Amount of | Part E Compensation |
|---|---|---|---|---|
| . . . . | | | | |
| 2913-2937 | 119 | 4680 | 3094 | 3570 |
| 2938-2962 | 120 | 4720 | 3120 | 3600 |
| 2963-2987 | 121 | 4760 | 3146 | 3630 |
| 2988-3012 | 122 | 4800 | 3172 | 3660 |
| . . . . | | | | |
| 3363-3387 | 137 | 5400 | 3562 | 4110 |
| 3388-3412 | 138 | 5440 | 3588 | 4140 |
| 3413-3437 | 139 | 5480 | 3614 | 4170 |
| 3438-3462 | 140 | 5520 | 3640 | 4200 |

During her base year,[1] claimant earned wages in the amount of $4,433, with high-quarter earnings in the amount of $2,989. Section 404(a)(1) of the Act, 43 P.S. §804(a)(1), requires that the employee's weekly benefit rate be computed as "(1) the amount appearing in Part B of the Table Specified for the Determination of Rate and Amount of Benefits on the line on which in Part A there appears his 'highest quarterly wage,' or (2) fifty per centum (50%) of his

---

[1] "Base year" is defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." Section 4(a)(1) of the Act, *formerly* 43 P.S. §753(a)(1).

full-time weekly wage, whichever is greater.'' Here, claimant's weekly benefit rate is $140, since one-half of her full-time weekly wage ($140) is greater than the rate of compensation that appears on the same line as her high quarterly wage ($122). Section 404 (c)(1), *formerly* 43 P.S. §804(c)(1), provided, however, that, in order to qualify for the amount of compensation listed in Part D, the employee must earn base year qualifying wages equal to the amount specified in Part C of the Table on the same line in which his weekly benefit rate appears. Claimant did not earn the amount of $5,520 necessary for her to qualify under this method. While Section 404(a)(3), 43 P.S. §804(a)(3), formerly allowed an employee to receive benefits at ''any one of the next four lower weekly benefit rates'' if sufficient base year wages appeared on the corresponding line in Part C of the Table, claimant nevertheless lacks the necessary amount of qualifying wages at the lower benefit rates.

Although an employee's eligibility can be redetermined under clause (1) if he failed to qualify under clause (2) of Section 404(a)(1), claimant is still ineligible for benefits after such a redetermination. Claimant's high-quarter earnings yield a weekly benefit rate of $122. Her base year wages of $4,433 are insufficient, however, to meet the requisite qualifying amount of $4,800 that appears on Part C of the same line. Again, claimant lacks sufficient qualifying wages to be eligible at ''any one of the next four lower weekly benefit rates.''

The issue in this case is whether the financial eligibility requirements of the Act violate the Equal Protection Clause of the Fourteenth Amendment. Claimant argues that employees with ''high quarterly wages'' exceeding the maximum amount listed in Part A of the Table must earn 20 percent of their wages

outside of their high quarter,[2] while employees with "high quarterly wages" below the maximum amount must earn approximately 30 to 35 percent of their wages outside of their high quarter.[3] Based upon her high quarterly wage of $2,989, claimant had to have earned 35.1 percent of her income outside of her high quarter to be eligible for benefits, where, in fact, she only earned 32.6 percent of her income outside of her high quarter. Claimant thus submits that Section 404(e) creates an irrational classification by requiring different percentages of wage distribution based upon the amount of high-quarter earnings.

Since no "suspect" classification or fundamental interest is presented here, the financial eligibility provisions must be tested under traditional equal protection analysis, which requires that the "legislative classification must be sustained unless it is 'patently

[2] At the time relevant to this case, an employee who received a high quarterly wage of $3,738 or more had to have earned qualifying wages of $6,000, or 20 percent of his earnings, outside of his high quarter, whichever was greater. Therefore, an employee who had earned high-quarter wages above $5,000 was subject only to the less stringent 20-percent requirement.

[3] Claimant also argues that a separate standard of eligibility is found in Section 401 of the Act, 43 P.S. §801. This section provided, in pertinent part, as follows:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

(a) Has, within his base year, been paid wages for employment as required by Section 404(c) of this act: Provided, however, That (1) not less than twenty per centum (20%) of the employe's total base year wages have been paid in one or more quarters, other than the highest quarter in such employe's base year. . . .

This section, however, does not create a second means for establishing eligibility for benefits. It merely creates a "minimum 20-percent rule" which is later incorporated into the Section 404(e) compensation table.

arbitrary' and bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson,* 411 U.S. 677, 683 (1973). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426 (1961). The Board contends that the financial eligibility scheme was designed to (1) insure that benefits are paid only to those employees who have demonstrated a genuine attachment to the labor force and (2) conserve limited public resources in the administration of the State's unemployment compensation program. We must therefore determine whether the above goals are "appropriate governmental interest[s] suitably furthered by the differential treatment." *Police Department v. Mosley,* 408 U.S. 92, 95 (1972). Certainly, the State has a legitimate interest in preserving the fiscal integrity of the fund and paying benefits only to employees genuinely attached to the labor market. We agree with the Board that these interests are furthered by the differential treatment of employees with high quarterly wages exceeding the Table maximum and employees who fall below that level on the Table.

Upon reviewing the Table, it is clear that claimant has focused her analysis too narrowly by simply examining the comparative percentage amounts which must be earned outside of the high quarter. Although the percentage amount required to be earned outside of the high quarter does decrease as high quarterly wages exceed the Table maximum, the employee must still earn a comparatively higher *actual dollar amount*. The system devised by the legislature recognizes that, where an employee with a sporadic work pattern earns a high quarterly wage, exceeding the Table maximum, it will become increasingly difficult for him

to continue to earn a substantial percentage (*e.g.,* 35 percent) of his overall compensation outside of his high quarter. Therefore, we are satisfied that a genuine attachment to the labor force can be shown by examining the actual dollars which must be earned outside of the high quarter, without requiring that those dollar amounts increase on a flat percentage basis.

We recognize that the requirements of Section 404(e) worked harshly in this case because claimant would have been eligible for benefits if she had made less money in her high quarter. It is not the province of the court, however, to redraft the State's unemployment compensation eligibility standards because an incidental individual inequality results from its application. *Ertman v. Fusari,* 442 F. Supp. 1147 (D. Conn. 1977). "General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Califano v. Jobst,* 434 U.S. 47, 53 (1977) (referring to the Social Security fund).

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78.

*Dandridge v. Williams,* 397 U.S. 471, 485 (1970).

We therefore conclude that the monetary eligibility requirements of the Act rationally relate to legitimate governmental interests and enter the following

## ORDER

AND Now, this 6th day of January, 1982, the order of the Unemployment Compensation Board of Review, dated August 9, 1979, determining Elaine Martin to be ineligible for benefits, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.