Donald B. Faix, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued May 10, 1985, before Judges MacPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Mary Ann Rossi,* with her, *Robert J. Shenkin, MacElree, Harvey, Gallagher, O'Donnell & Featherman, Ltd.,* for petitioner.

*Jules S. Henshell,* with him, *John Kane* and *Howard Ulan,* Assistant Counsel, for respondent.

OPINION BY JUDGE COLINS, October 23, 1985:

Donald Faix, Petitioner, appeals from the order of the Department of Public Welfare (DPW), Office of Hearings and Appeals, which rejected the recommendation of the Hearing Officer that his liability for his son's care be assessed at $262.00 a month and denied his appeal. DPW determined that Petitioner's liability had been correctly computed to be $957.00 a month, as mandated by the regulations found at 55 Pa. Code §4305, promulgated under the Mental Health and Mental Retardation Act of 1966 (Act).[1]

Petitioner had been paying a monthly assessment of $252.00 for the care of his mentally retarded minor son, Thomas, who had been placed in a community living arrangement (CLA). The actual cost of Thomas' placement has been estimated to be $24,000 a year. Petitioner's annual income in 1983 was $68,-722.

Petitioner contends that the assessment constitutes 61% of his disposable income. He has two other children aged sixteen and eighteen whose educational expenses he will be unable to provide if this assessment is upheld. He further claims that if this assessment is upheld, his son will be removed from the CLA and will have to return home, even though the child has progressed there, because Petitioner's "mandatory" expenses will exceed his personal income.

When the Petitioner appealed this assessment, the Hearing Officer recommended that his appeal be sustained due to a showing of hardship and that his lia-

---

[1] *Mental Health and Mental Retardation Act of 1966,* Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §§4101-4704.

bility be assessed at $262.00 a month.[2] DPW rejected the Recommendation and denied Petitioner's appeal. DPW subsequently denied a request for reconsideration.

Petitioner appeals this decision because he claims that he has shown substantial hardship. Alternatively, he asserts that the regulations are invalid because they are inconsistent with the legislative intent of the Act, and because they place an undue and unconstitutional burden upon middle income and large families, and are per se irrational and invalid.

Respondent, DPW, argues that Petitioner has not met his burden of showing that the assessed liability will harm his son by causing his removal from the CLA or causing a "substantial hardship" to Petitioner himself; that the regulations are consistent with legislative intent; and that the issue of whether an equal protection violation has occurred was not properly raised below.

The regulations propounded pursuant to the Act determine parental liability for the cost of care of minor children by utilizing the formula delineated in §4305.6 of the regulations to determine discretionary income. Put simply, gross annual income includes all earned income, interest income, dividends, benefits including unemployment compensation, Social Security, Public Assistance, capital gains, alimony or support. Taxes, child care costs (using Internal Revenue Service limits), medical expenses and health insurance premiums are deducted. A living allowance of $6,000 plus $1,000 for each dependent is also deducted. What remains is discretionary income, here computed to be $18,686. Neither party to this action contends that this calculation is erroneous.

---

[2] The function of the hearing officer is fact-finding and making recommendations. He or she does not make the final decision. See 55 Pa. Code §4310.21-22.

Appendix A of the regulations mandate that for any discretionary income over $17,000, 1/20th of discretionary income plus $23 would be the amount of monthly liability. Neither party has disputed the resultant computation of $957.00.

Petitioner can request abatement or modification but must show either clinical reasons or "substantial hardship". The requirements enumerated in the regulations for a showing of clinical reasons are as follows:

(i) Abatement for clinical reasons will be granted only if:

(A) the imposition of the maximum liability would be likely to negate the effectiveness of treatment, or prohibit the client's entry into treatment; and

(B) the failure to provide treatment would result in serious harm to the client's welfare or in greater cost to this Commonwealth due to deterioration of the client's condition.

(ii) Requests for abatement or modification for clinical reasons must be initiated by either the mental health or mental retardation professional treating the client or by the liable person or persons. *Requests initiated by the liable person or persons must be endorsed in writing by the mental health or mental retardation professional treating the client.*

(iii) When making a request for abatement or modification for clinical reasons, the treating mental health or mental retardation professional must document the clinical reasons for the request in the client's case record by stating how the client's welfare would be seriously harmed or how the client will cause this Commonwealth to incur greater costs if an abate-

ment or modification is not granted. These case records are subject to audit by county program or Department MH/MR professionals. 55 Pa. Code §4305.7(b)(3) (emphasis added). Petitioner claims that his son will suffer by being removed from the CLA, where he is progressing, because his father cannot afford to pay the amount assessed. However, as seen above, a showing of clinical reasons must be endorsed by the treating professional. This has not been done. Although the child may be harmed by lack of treatment, this must be verified by someone who is treating him, not by a layman.

The burden of showing substantial hardship is a difficult one, because most familial expenses are excluded from consideration in determining abatement or modification:

> (2) Maximum liability may be abated or modified by the county administrator when imposition of this liability would result in a substantial hardship upon the mentally disabled person, a person owing a legal duty to support such a person, or the family of either.
>
> (i) Requests for a hardship abatement must be initiated by the liable person.
>
> (ii) Substantial hardship is determined by computing the amount of money paid annually by the liable person on eligible debts and dividing that amount by the discretionary income.
>
> (A) The following debts are included in the living and dependents' allowances and thus they are not grounds for abatement or modification:
>
> (I) Mortgage or rent on principal residence.
>
> (II) Utility payments.
>
> (III) Insurance premiums of any type.

(IV)  Personal use items.

(V)  Food.

(VI)  Clothing.

(VII)  Medical expenses already deducted under §4305.6(B)(2)(iv) (relating to determining maximum liability).

(VIII)  Payments on the first car.

(B)  Any debt originating after the onset of treatment may not be included in determining if grounds for abatement exist except as provided in clause (D) or (E).

(C)  Any debt which the liable person is not legally obligated to pay must not be included in determining if grounds for abatement exist.

(D)  Debts caused by unforeseen circumstances over which the liable person has no control, such as loss from fire not covered by insurance, are included when determining if grounds for a hardship abatement exist.

(E)  Debts incurred by the liable person after the onset of treatment may be considered in determining whether grounds for abatement exist if services are provided to a client for more than 365 consecutive days.

(F)  Only debts on which payments are made on a regularly scheduled basis may be included when determining if grounds for a hardship abatement exist.

(iii)  Use the following procedure to determine if grounds for a hardship abatement exists:

(A)  *Step 1.*  Compute annual payments on eligible debts by summing the annual payment on each eligible debt of the liable person.

(B)  *Step 2.*  Compute the debt payment to income ratio by dividing the annual payment on debts determined in Step 1 by the discre-

tionary income, computed in §4305.6(B)(3) (relating to determining maximum liability). The resulting quotient is the ratio of debt payments to income.

(C)  *Step 3.*  Determine amount of abatement or modificaton as follows:

(I)  If the ratio of debt payment to income exceeds or is equal to 0.8, abate liability to 0.

(II)  If the ratio is less than 0.8, but greater than or equal to 0.7, modify liability to 25% of the assessed amount.

(III)  If the ratio is less than 0.7, but greater than or equal to 0.6, modify liability to 50% of the assessed amount.

(IV)  If the ratio is less than 0.6, but greater than or equal to 0.5, modify liability to 75% of the assessed amount.

(V)  *If the ratio is less than 0.5, liability shall be neither modified nor abated.*

55 Pa. Code §4305.7(2) (emphasis added).

Neither party disputes the finding by DPW that the ratio of eligible debts is less than 0.5. Therefore, Petitioner is not entitled to abatement under the substantial hardship provision.

When the party with the burden of proof has failed below, our scope of review is limited to a determination of whether the adjudication was in accordance with the law, whether the petitioner's rights were violated, and whether the hearing officer's findings of fact can be upheld without a capricious disregard of competent evidence. *Powell v. Department of Public Welfare,* 72 Pa. Commonwealth Ct. 156, 455 A.2d 1287 (1983).

Petitioner claims that these regulations deny equal protection to middle income families and large families. However, even though the payment required

is a relatively large one, it is based upon income and includible expenses, taxes, etc., and does have a rational basis, relating payment to the discretionary income of those who are liable. Therefore, it cannot be said to be violative of equal protection.

Petitioner is correct in asserting that regulations inconsistent with legislative intent are invalid. *Pennsylvania State Education Association v. Department of Public Welfare,* 68 Pa. Commonwealth Ct. 279, 449 A.2d 89 (1982). However, he has not shown how they are inconsistent other than that he believes his assessment is too high, nor has he cited any authority to support his contention. Because we are dealing with neither a fundamental right nor a suspect classification, this classification must be sustained if it bears a rational relationship to a legitimate governmental interest. *Martin v. Unemployment Compensation Board of Review,* 63 Pa. Commonwealth Ct. 629, 439 A.2d 207 (1982), *aff'd* 502 Pa. 282, 466 A.2d 107 (1983), *cert. denied,* 466 U.S. 952 (1984). DPW has promulgated this procedure in order to recover public funds whenever possible pursuant to Section 501 of the Act,[3] thus a rational relationship does exist.

Petitioner has not shown clinical reasons for abatement because he did not provide professional verification to show that the child would suffer from removal from the CLA. Any other arguments, although they induce our sympathies, cannot be sustained. Therefore, the order of DPW is affirmed.

## ORDER

AND Now, October 23, 1985, the order of the Department of Public Welfare, dated April 17, 1984, is affirmed.

---

[3] 50 P.S. §4501.