551 A.2d 605

Lawrence Weychert, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Lawrence Weychert, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 31, 1988, before Judges DOYLE and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Patricia D. Hilsinger,* for petitioner.

*Howard Ulan,* Assistant Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, December 12, 1988:

Lawrence Weychert (Petitioner) petitions for review of the order of the Department of Public Welfare (DPW), Office of Hearings and Appeals which rejected Petitioner's request for financial and clinical abatement of his assessed liability for care at Philadelphia State Hospital during two involuntary hospitalizations. We affirm.

On December 22, 1982, Petitioner was involuntarily committed to Philadelphia State Hospital where he remained until he was discharged on March 1, 1984. The total cost of care for this stay, computed at a per diem rate of $160 per day, came to $64,160.00. Section 501 of the Mental Health and Mental Retardation Act of 1966 (Act), Act of October 20, 1966, *as amended,* 50 P.S. §4501, states that Petitioner is fully liable to reimburse DPW for the public funds expended on Petitioner's care during his hospital stay. However, Section 504(a) of the Act, 50 P.S. §4504(a), permits the Secre-

tary of DPW to abate, modify, compromise or discharge a mental patient's liability for repayment of funds expended if the Secretary is satisfied that imposition of full liability would result in a substantial hardship upon the mentally disabled person or create such a financial burden as to nullify the results of care and treatment afforded. Section 504(d) of the Act, 50 P.S. §4504(d), directs the Secretary to promulgate by regulation the criteria for determination of liability.

The only source of funds which Petitioner has available to repay the cost of his care is social security disability (SSD) benefits in the amount of $472.00 per month. Pursuant to Section 504(d) of the Act, DPW enacted 55 Pa. Code §4310.8 which deals with assessment of SSD benefits to meet the cost of patient care. Under this regulation, the first $60 of SSD benefits is reserved for the patient's personal use, the rest is available to meet the cost of care incurred. Since in Petitioner's case the cost of care was at least $4300.00 per month, DPW assessed all of Petitioner's SSD income to meet the cost of care, except $60 per month. Petitioner's total liability for care was assessed at $6,024.49, or approximately 10% of the actual bill.

DPW regulations permit Petitioner to file for further abatement of liability based on extraordinary financial hardship and medical necessity. Petitioner filed a petition for financial abatement under 55 Pa. Code §4310.17(a) contending that he had $6,990.22 in other debts from prior hospitalizations and loans, a $3405.00 dentist bill, and that he needed additional money for clothing. A hearing on this petition was held on August 23, 1984. The hearing examiner concluded that 55 Pa. Code §4310.18 and §4310.19 require that only debt payments made on outstanding bills incurred before treatment began may be considered for abatement purposes. Petitioner presented no evidence of payment of

any bill. The hearing examiner also found that Philadelphia State Hospital provided dental services but that Petitioner had refused such services in favor of a private dentist. Free clothing was also available at the hospital. Petitioner's appeal from the denial of this petition is docketed at 2911 C.D. 1984.

Petitioner was once again involuntarily committed to Philadelphia State Hospital for the period of July 2, 1985 to October 15, 1985. During this period Petitioner received $503.00 per month in SSD benefits. DPW allowed Petitioner $60 per month of this income for personal expenses, granted Petitioner a $158.00 per month rent allowance, and assessed the remaining SSD income against the cost of care by a notice of assessment dated July 16, 1985. Four months after Petitioner had been discharged, Petitioner filed a request for clinical abatement pursuant to 55 Pa. Code §4310.20. A clinical abatement may be granted on the grounds of medical necessity if imposition of financial liability would be likely to negate the effectiveness of the patient's treatment.

A hearing on this petition, which pertained to both hospitalizations, was held on October 21, 1986. 55 Pa. Code §4310.20 requires that a petition for clinical abatement be endorsed by the mental health professional who is treating the client. Petitioner's request was endorsed by a staff psychiatrist from Northeast Mental Health/Mental Retardation Center who did not begin treating Petitioner until after he was discharged from Philadelphia State Hospital. The hearing examiner concluded that "client," as defined by 55 Pa. Code §4310.4, meant a patient at a state institution. The mental health professional who endorsed Petitioner's request did not treat Petitioner when he was a "client," that is to say, a patient at a state institution.

The hearing examiner concluded that a request for clinical abatement is only valid when made at a time

when the patient is a resident of a state institution and endorsed by the treating professional at the institution. Since Petitioner met neither of these two requirements, the hearing examiner rejected this petition as untimely filed. DPW granted reconsideration of the petition and remanded to the hearing examiner who once again denied Petitioner's request. Petitioner's appeal on this petition is docketed at 3365 C.D. 1986 and this and the petition for review at 2911 C.D. 1984 are consolidated for review.

Petitioner presents a number of arguments which we will review *seriatim*. Petitioner's first three contentions relate to the dismissal of his petition for clinical abatement as untimely filed. Petitioner first contends that he did not file a petition for a clinical abatement while a resident of Philadelphia State Hospital because DPW never notified him of his right to such an abatement in violation of due process and 55 Pa. Code §5100.54, which states that a patient must be advised of such a right. But the hearing examiner found that Petitioner received a notice of assessment on July 16, 1985, just two weeks after he had been readmitted to Philadelphia State Hospital, and that this form satisfies 55 Pa. Code §5100.54 by including on it a list of grounds which must be met in order to claim a clinical abatement. Petitioner chose not to pursue this remedy until four months later, after he had been discharged.

Petitioner next argues that the hearing officer by interpreting 55 Pa. Code §4310.20 as requiring that only a "client" who is currently a patient in a state institution may file a request for clinical abatement has improperly promulgated a new regulation. We disagree. The plain language of this Section states that only a client may file such a request and client is expressly defined in 55 Pa. Code §4310.4 as a resident of a state institution. It is not defined as former client.

We note that Petitioner promptly filed his request for financial abatement on November 10, 1983, during the time period of his first hospitalization at Philadelphia State Hospital. Petitioner amended this petition to add his request for clinical abatement over two years later on November 7, 1985. The complicated procedural record of this case shows repeated petitions for abatement requested over a two year period. Petitioner's request for clinical abatement is an add on filed after financial abatement had been denied. The fact that clinical abatement was suggested as a possibility by a DPW employee after Petitioner had been discharged does not estop DPW from denying the request as untimely because Petitioner never filed a timely request to begin with. Petitioner cannot gain back rights lost through his own inactivity by claiming estoppel. More to the point, Petitioner did not present competent evidence of clinical abatement. The only evidence submitted by his treating professional was a letter objected to as hearsay. *See Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987); *Burks v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 6, 408 A.2d 912 (1979).

Since Petitioner cannot meet the evidentiary requirements of either clinical or financial abatement, he next attacks 55 Pa. Code §4310.8 as denying equal protection. 55 Pa. Code §4310.8 sets up a uniform rule that in all cases where a patient is receiving monthly SSD benefits the first $60 goes to his personal use and the rest is available to meet the cost of care. By contrast, federal regulations on the use of SSD benefits when a beneficiary is institutionalized, specifically 20 C.F.R. §404.2040(b), state that when benefits are paid to a "representative payee" on behalf of the patient, the representative payee may allocate the SSD funds according to the beneficiary's best interest and common maintenance including obtaining food, clothing, recrea-

tion and training as well as the costs of care of the institution. It is Petitioner's position that these more flexible federal regulations which consider individual needs should take precedence over 55 Pa. Code §4310.8 which mechanically allocates the first $60 of SSD income to the patient and the rest to DPW.

DPW argues that the federal regulations pertain only to representative payee cases. A representative payee is appointed by the Social Security Administration to manage the SSD benefits of an incompetent beneficiary. 20 C.F.R. §404.2001(a). Petitioner was considered sufficiently competent to manage his money and no representative payee was appointed for him although his father assisted him in paying the bills. Petitioner counters that to treat representative payee cases different from nonrepresentative payees is a violation of equal protection.

The difficulty with Petitioner's position is that equal protection does not apply where there are separate and distinct classifications and a rational basis for such classifications. *Faix v. Department of Public Welfare,* 92 Pa. Commonwealth Ct. 383, 499 A.2d 411 (1985). We find such a rational basis in this case. Representative payees are accountable to the Social Security Administration for the monies they expend on behalf of their beneficiaries and consequently regulations have been enacted to ensure they do not violate their fiduciary duty. *See Weiss v. Department of Public Welfare,* 77 Pa. Commonwealth Ct. 353, 465 A.2d 1319 (1983). A beneficiary who is entitled to spend his own money, such as Petitioner, is accountable to no one but himself and needs no such regulations. Petitioner's equal protection challenge fails in the light of such a rational distinction.

Nevertheless, Petitioner persists in asserting that as a matter of federal law under the Social Security Act, 42 U.S.C. §§401-433, social security benefits must first be

directed to the patient's expenditures and needs rather than the cost of hospital care. This contention was explicitly rejected in *Department of Health and Rehabilitative Services, State of Florida v. Davis*, 616 F.2d 828 (5th Cir. 1980). Petitioner also asserts that DPW has violated the "fair means" collection test developed in *Good v. Wohlgemuth*, 15 Pa. Commonwealth Ct. 524, 327 A.2d 397 (1974) by misleading Petitioner that he had a legal obligation to pay his hospital debt in full. But we note that DPW has collected nothing, this is solely a case to *assess* liability. Collection is an entirely different matter not at issue. *See Selelyo v. Department of Public Welfare*, 34 Pa. Commonwealth Ct. 235, 382 A.2d 1308 (1978).

Finally, Petitioner argues that the regulations adopted by DPW are *ultra vires* because Section 504(d) of the Act directs the Secretary to determine by regulation criteria by which the extent of liability shall be determined, not the extent to which liability may be abated. We find this argument to be an exercise in semantics. Section 504(a) of the Act specifically gives the Secretary the power to abate liability and the regulations track the criteria for abatement expressed in the statute. Petitioner harms no one but himself by attacking a regulatory scheme which initially reduces his liability for a $64,160.00 hospital bill by 90% and then permits him to file petitions for financial and clinical abatement of the remaining liability. Petitioner bears the evidentiary burden of establishing the grounds for these abatements. *Tartaglia v. Department of Public Welfare*, 52 Pa. Commonwealth Ct. 579, 416 A.2d 608 (1980). Since Petitioner has failed to present the necessary evidence, we must affirm the orders of the Office of Hearings and Appeals.

ORDER

Now, December 12, 1988, the orders of the Department of Public Welfare, Office of Hearings and Appeals dated September 10, 1984 and October 23, 1986, are hereby affirmed.